738 S.E.2d 251

Suzanne Roerig MENDENALL, Personal Representative of the Estate of Everette Eugene Mendenall, Plaintiff,

v.

ANDERSON HARDWOOD FLOORS, LLC, Shaw Industries, Inc., and Shaw Industries Group, Inc., Defendants.

Appellate Case No. 2012–210806.

No. 27219.

Supreme Court of South Carolina.

Heard Oct. 30, 2012.

Decided Feb. 13, 2013.

Randolph Murdaugh, IV, and Ronnie L. Crosby, both of Hampton, Paul N. Siegel of Walterboro, and John P. Freeman of Columbia, for Plaintiff.

Stephen L. Brown and Russell G. Hines, both of Charleston, for Defendants.

Justice KITTREDGE.

We certified the following question from the United States District Court for the District of South Carolina:

Does the "dual persona" doctrine allow an injured employee to bring an action in tort against his employer as a successor in interest who, through a corporate merger, received all liabilities of a predecessor corporation that never employed the injured person but allegedly performed the negligent acts that later caused the employee's injuries, or is such action barred by the exclusivity provision of the South Carolina Workers' Compensation Act?

We answer this question only insofar as acknowledging that South Carolina recognizes the dual persona doctrine. However, we do not decide whether the dual persona doctrine is applicable to this case, as that determination is one properly made by the United States District Court.

**I.**

Walterboro Veneer, Inc., (Walterboro) was a South Carolina corporation that owned and operated a wood product manufacturing plant in Colleton County. It appears that in 2003, Walterboro designed and constructed a cement vat, "Vat # 3," for the purpose of soaking hardwood logs in a highly heated solution prior to milling. Thereafter, through a series of mergers, Anderson Hardwood Floors, LLC, (Anderson) became the surviving entity, assuming all liabilities.[1] As a result

1. Pursuant to S.C.Code Ann. § 33–11–106(a)(1) (2006), when a merger takes effect, "every other corporation party to the merger merges into the surviving entity and the separate existence of every corporation except the surviving entity ceases." The surviving entity has all liabilities of each corporation party to the merger (including potential lawsuit liability) and the surviving entity may be substituted in the proceeding for the corporation whose existence ceased. See S.C.Code Ann. § 33–11–106(a)(3).

of these mergers, the former physical plant and operation of Walterboro continued under the Anderson name.

In January 2008, Everette Mendenall was hired to work at the Colleton County plant formerly owned and operated by Walterboro. Tragically, four months into his employment, Mendenall fell into Vat # 3 while he was attempting to access a steam leak for repairs. The solution in the vat was heated to approximately 193 degrees Fahrenheit and severely burned ninety percent of Mendenall's body, which eventually resulted in his death.

Because Mendenall was injured and ultimately died from the work-related injury, he received workers' compensation benefits. Mendenall's wife (Plaintiff), as personal representative of her husband's estate, filed a complaint in state court alleging wrongful death and survival actions against Walterboro, Anderson, and the previously existing corporate entities (collectively "Defendants"). Essentially, Plaintiff alleged that Mendenall's fall was the result of Vat # 3's faulty design and construction; the failure to warn of Vat # 3's dangerous conditions; and the negligent maintenance of Vat # 3 after notice of its hazardous conditions.

Defendants removed the case to federal court in May 2011 and subsequently moved to dismiss the case, arguing they were immune under the South Carolina Workers' Compensation Act (the Act).[2] Each defendant sought dismissal based on the Act's exclusivity provision.[3]

Plaintiff opposed dismissal, arguing injured employees are not barred from filing civil actions against third parties. Thus, since Mendenall was never employed by Walterboro, Plaintiff argued Walterboro's inchoate liability for defectively designing and constructing Vat # 3 did not derive from any employment relationship. Rather, according to Plaintiff, Wal-

---

2. S.C.Code Ann. §§ 42–1–10 to –19–50 (Supp.2012).

3. The Act's exclusivity provision states:

> The rights and remedies granted by this Title to an employee ... shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

S.C.Code Ann. § 42–1–540.

terboro's liability arose independently as a third party and passed to Anderson through the series of mergers. Therefore, based on the "dual persona" doctrine, Plaintiff contended Anderson should be liable for the allegedly tortious acts of its predecessors because of its dual persona, both as Mendenall's employer and as the successor in interest to the third-party liabilities of Walterboro.

The federal district court certified the above question for our consideration.

## II.

The Act is a comprehensive scheme created "to provide compensation to employees injured by accidents arising out of and in the course of their employment." *Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 69–70, 267 S.E.2d 524, 526 (1980). The concept of workers' compensation is "founded upon recognition of the advisability, from the standpoint of society as well as of employer and employee, of discarding the common law idea of tort liability in the employer-employee relationship and of substituting therefor the principle of liability on the part of the employer, regardless of fault, to compensate the employee, in predetermined amounts based upon his wages, for loss of earnings resulting from accidental injury arising out of and in the course of employment." *Id.* (quoting *Case v. Hermitage Cotton Mills*, 236 S.C. 515, 530–531, 115 S.E.2d 57, 66 (1960)). "The employee receives the right to swift and sure compensation; the employer receives immunity from tort actions by the employee." *Id.* "This quid pro quo approach to [workers'] compensation has worked to the advantage of society as well as the employee and the employer." *Id.*

As noted above, section 42–1–540 of the Act is an exclusivity provision, disallowing tort suits against the employer and limiting the injured employee's rights and remedies to those provided by the Act. However, by its terms, the exclusive remedy provision of the Act limits the employee's remedy "as against his employer." Thus, where the injury is due to a third party's negligence, a plaintiff can collect workers' compensation benefits *and* sue the third party responsible for causing the injuries. Yet, some jurisdictions recognize

narrow exceptions which permit an employer to be sued in tort.

These recognized exceptions are premised on the notion that the employee is not suing his employer, but rather a separate legal entity that allegedly caused his injury. *See Tatum v. Med. Univ. of S.C.*, 346 S.C. 194, 205, 552 S.E.2d 18, 24 (2001). These doctrines are the "dual capacity" doctrine and the related "dual persona" doctrine. "Under the 'dual capacity' doctrine, an employer becomes vulnerable to suit as a third party 'if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent to those imposed on him as employer.'" *Id.* at 203, 552 S.E.2d at 23 (quoting 2A Larson *Workmen's Compensation Law* § 72:80 (1976)). Under the dual persona doctrine, "[a]n employer may become a third person, vulnerable to tort suit by an employee, if—and only if—it possesses a second persona so completely independent from and unrelated to its status as employer that by established standards the law recognizes that persona as a separate legal person." 6 *Larson's Workers' Compensation Law* § 113.01[1] (Matthew Bender, Rev. Ed. 2012). "While the 'dual persona' doctrine recognizes different identities, the 'dual capacity' doctrine recognizes different activities or relationships." *Tatum*, 346 S.C. at 203, 552 S.E.2d at 23 (noting Larson disfavors the dual capacity doctrine but suggests the dual persona doctrine is more favorable). This Court has considered and rejected the dual capacity doctrine. *Johnson v. Rental Uniform Serv. of Greenville*, 316 S.C. 70, 70, 447 S.E.2d 184, 185 (1994). However, this Court has neither accepted nor rejected the dual persona doctrine.[4] Today, we accept the dual persona doctrine as an exception to the Act's exclusivity provision.

The dual persona doctrine is a narrow exception, applicable only where the second set of obligations that forms the basis

---

4. This Court discussed the dual persona doctrine in *Tatum v. Medical University of South Carolina*, 346 S.C. 194, 552 S.E.2d 18 (2001). However, this Court did not accept or reject the dual persona doctrine in *Tatum* because a majority of the Court found that, in any event, the dual persona doctrine was inapplicable to the facts presented. *Id.* at 206, 552 S.E.2d at 24. Although the *Tatum* majority's discussion of the dual persona doctrine is correct, its application of the law to the facts of that case was erroneous.

of the tort suit is entirely independent of the defendant's obligations as an employer. *See* Larson, *supra,* § 113.01[4]. Where those sets of obligations are intertwined such that they cannot be logically separated, application of the dual persona doctrine is inappropriate. *See id.* Professor Larson explains:

> If the dual persona doctrine is to apply, it must be possible to say that the duty arose *solely* from the *nonemployer* persona.... For only in such a case can the second persona be really distinct from the employer persona. In other words, it is not enough ... that the second persona impose *additional* duties. They must be totally separate from and unrelated to those of the employment.

*Id.*

The dual persona doctrine will apply only in truly exceptional situations. *See, e.g., Herbolsheimer v. SMS Holding Co.,* 239 Mich.App. 236, 608 N.W.2d 487, 493 (2000) ("These exceptional situations are found only where there is a genuine case of a separate legal personality and the relationship between the cause of action and the plaintiff's employment is no more than incidental."). We agree with analytical framework and reasoning of the *Herbolsheimer* court, which stated:

> We are unprepared to ... assume that a predecessor company in our case is automatically a third party that can be sued through the successor company that happens to also be the employer.... Instead, we must look to see if there are *separate obligations* created by the predecessor that can form the basis of the dual-persona suit. Simply being a successor in liability does not make a company liable—there must be an allegedly viable legal claim against the predecessor in order for the case to survive a motion for summary disposition.

*Id.* at 496 (emphasis added). We further agree with the proposition that "if the plaintiff[s] could not have sued the predecessor in tort if the merger had not occurred, they cannot sue the [successor] in tort." *Van Doren v. Coe Press Equip. Corp.,* 592 F.Supp.2d 776, 801 (E.D.Pa.2008). "This rationale is based on the idea that the dual persona doctrine should not be applied to allow 'a merger to increase, rather

than preserve, inchoate liability.'" *Id.* (quoting *Braga v. Genlyte Group, Inc.*, 420 F.3d 35, 44–45 (1st Cir.2005)).

We emphasize that, under South Carolina law, whether the dual persona doctrine applies in a particular case turns on whether the duty claimed to have been breached is distinct from those duties owed by virtue of the employer's persona as such. In this case, that determination lies with the federal court.

## III.

We find South Carolina recognizes the dual persona doctrine.

**CERTIFIED QUESTION ANSWERED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.