Blackwell, Justice.
Just a few months ago, we held in Zaldivar v. Prickett, 297 Ga. 589 (774 SE2d 688) (2015), that OCGA § 51-12-33 (c) — which directs the trier of fact in certain cases to “consider the fault of all persons or entities who contributed to the alleged injury or damages” — refers to the “fault” of “all persons or entities who have breached a legal duty in tort that is owed with respect to the plaintiff, the breach of which is a proximate cause of the injury sustained by the plaintiff . . . , regardless of whether such tortfeasor would have actual liability in tort to the plaintiff.” Zaldivar, 297 Ga. at 600 (1) (footnote omitted). “[T]he apportionment statute permits consideration, generally speaking, of the ‘fault’ of a tortfeasor, notwithstanding that he may have a meritorious affirmative defense or claim of immunity against any liability to the plaintiff.” Id. at 598 (1) (footnote omitted). Before we issued our decision in Zaldivar, the United States District Court for the Northern District of Georgia certified the following question to us:
Does OCGA § 51-12-33 (c) allow the jury to assess a percentage of fault to the non-party employer of a plaintiff who sues a product manufacturer and seller for negligence in failing to warn about a product danger, even though the non-party employer has immunity under OCGA § 34-9-11?
Unless there is a compelling reason to treat nonparty employers with immunity under the Workers’ Compensation Act differently than nonparties with other defenses or immunities against liability, Zal-divar requires an affirmative answer to the certified question. We see no such compelling reason, and so, we adhere to Zaldivar and respond to the District Court in the affirmative.
We begin with a brief summary of this litigation. Jock L. Walker was injured at work in August 2010 while he operated a machine that had been designed and manufactured by Tensor Machinery, Ltd. and Tensor Fiber Optic Technologies, Ltd. (collectively, “Tensor”). After reaching a settlement with his employer for workers’ compensation benefits, Walker sued Tensor, alleging that it negligently failed to warn him of safety-related defects in the machine.[1] Tensor then gave notice under OCGA § 51-12-33 that it intended to ask the trier of fact in this case to assign some responsibility for Walker’s injuries to his *298 employer. In response, Walker filed a motion in limine to exclude all evidence concerning fault on the part of his employer, asserting that OCGA § 51-12-33 does not allow a plaintiff to apportion fault to a nonparty employer that has immunity from liability in tort by virtue of the exclusive remedy provision of the Workers’ Compensation Act, OCGA § 34-9-11.
Although our opinion in Zaldivar did not focus on this issue, we did have occasion to speak of it in our opinion. The defendant in that case, like Tensor, sought to assign some responsibility to the plaintiff’s employer, and we noted that if the plaintiff had sued his employer (for negligent entrustment),
he might well have lost as a result of comparative negligence ... or as a result of some other affirmative defense (such as the exclusive remedy provisions of the Workers’ Compensation Act). But an affirmative defense or immunity does not eliminate “fault” or cut off proximate cause, it only bars liability notwithstanding that the “fault” of the tort-feasor was a proximate cause of the injury in question.
Zaldivar, 297 Ga. at 604 (2) (emphasis supplied). Moreover, two of the foreign cases upon which we relied in Zaldivar specifically approved consideration of the nonparty employer’s fault under similar apportionment statutes notwithstanding the exclusive remedy provisions of the applicable workers’ compensation statutes. Id. at 599 (1) (citing Williams v. White Mountain Constr. Co., 749 P2d 423, 429 (III) (B) (Colo. 1988), and Sedgwick Ins. v. CDS, Inc., 47 FSupp.3d 536, 549(B) (2) (E.D. Mich. 2014)). Georgia commentators have drawn similar conclusions. See Franklin E. Jenkins III & Wallace Miller III, Ga. Automobile Insurance Law § 48:3 (i) (2014-2015 ed.) (“[t]he rationale in Barnett v. Farmer, [308 Ga. App. 358, 362 (2) (707 SE2d 570) (2011) (physical precedent that Zaldivar, 297 Ga. at 598 (1) — which also cited this treatise — relied on as persuasive Georgia authority)] . . . should extend to virtually any form of tort immunity, including . . . workers’ compensation as [an] exclusive remedy”); Thomas A. Eaton, Who Owes How Much? Developments in Apportionment and Joint and Several Liability under OCGA § 51-12-33, 64 Mercer L. Rev. 15, 33, n. 104 (IV) (A) (2012) (“employees who are injured on the job and bring tort actions against third parties will now have their recovery against third parties reduced by any percentage of fault assigned to the plaintiffs’ employers” even though their liability is limited by workers’ compensation) (quoted in Jenkins & Miller, supra at 48:3 (i), n. 38).
*299 Other jurisdictions have recognized that “[i]t is accepted practice to include all tortfeasors in the apportionment question. This includes ... persons alleged to be negligent but not liable in damages to the injured party such as in the third-party cases arising in the workers’] compensation area.” Sullivan v. Scoular Grain Co. of Utah, 853 P2d 877, 882 (I) (D) (Utah 1993) (quoting Carroll R. Heft & C. James Heft, Comparative Negligence Manual § 8.100, at 14 (rev. ed. 1992)). See also Fabre v. Marin, 623 S2d 1182, 1187 (Fla. 1993) (quoting an earlier edition of the same treatise); 57B AmJur2d Negligence § 1037 (database updated August 2015). More specifically, this rule is followed in jurisdictions that have apportionment schemes similar to that of OCGA § 51-12-33, in which, consistent with the analysis in Zaldivar, 297 Ga. at 597 (1),[2] a meritorious affirmative “defense or immunity may cut off liability, [but] a tort-feasor is still a tortfeasor, and nothing about his defense or immunity” means that he was not at fault by his commission of a tort that was the proximate cause of the plaintiff’s injury.
Immunity from liability does not prevent an immune party from acting or omitting to act. Rather, immunity shields that party from any liability stemming from that act or omission. There is nothing logically or legally inconsistent about allocating fault but shielding immune parties from liability for that fault. And there is no reason to imagine that the Legislature did not intend fault to be allocated against immune parties, insofar as that allocation can be of no detriment to those parties.
Mack Trucks v. Tackett, 841 S2d 1107, 1114 (III) (a) (Miss. 2003) (footnote omitted). See also Ocasio v. Fed. Express Corp., 33 A3d 1139, 1147 (II) (A) (3) (a) (N.H. 2011) (“[A]llocatingfault to an employer does not destroy, or even affect, the employer’s immunity from suit. Immunity does not mean that a party is not at fault; it simply means *300 that the party cannot be sued.” (Citation and punctuation omitted)); Mills v. MMM Carpets, 1 Cal. Rptr. 2d 813, 818 (Ct. App. 1991) (“the negligent employer’s fault in a case like this one is measured, not in order to impose tort liability on it, but to determine the comparative fault and commensurate liability of a defendant in the action”).
Nevertheless, Walker says, the allocation of fault under OCGA § 51-12-33 (c) to nonparty employers with immunity under the Workers’ Compensation Act would upset the careful balance that the General Assembly struck in the Act between the respective interests of employers and employees, and for that reason, Walker urges, OCGA § 51-12-33 (c) cannot reasonably be understood to permit such an allocation of fault. We disagree. The General Assembly has determined that the exclusive remedy provision and limited benefits of the workers’ compensation system, OCGA § 34-9-11, are “the quid pro quo for workers receiving a guarantee of prompt benefits for work-related injuries without regard to fault or common-law defenses and without the delay inherent in tort litigation.” Doss v. Food Lion, 267 Ga. 312, 313 (2) (477 SE2d 577) (1996). “Allocating fault to an immune employer does not disturb this quid pro quo relationship between employee and employer or the legislative policy underlying it. A plaintiff may still obtain benefits, without having to prove the employer’s negligence, and the employer is still immune from liability.” Ocasio, 33 A3d at 1147 (II) (A) (3) (a).
The result of immunizing employers from fault as well as from liability is that third parties pick up the tab for the employer’s fault, potentially paying more than their share in order to make up for the excluded employer.... The question becomes whether the injured plaintiff must see his potential recovery diminished by an assignment of fault to his immune employer or whether a third party defendant may be made to respond in damages in an amount that exceeds that defendant’s proportionate share of fault in causing the injury.... [T]he more equitable result is to permit allocation of fault to the exempt employer. While this diminishes the injured party’s ultimate recovery in the tort action, the injured party has already obtained or may, post verdict, seek recovery under the compensation law from his employer. This right of recovery under workers’ compensation law is specifically intended to replace the previously-existing common law right of recovery against the employer in tort. To immunize employers from fault allocation in third-party tort suits would go against the spirit of the bargain between employers and employees that underlies workers’ compensation; instead, *301 the third party would pay the employer’s cost of compensation, and the employee would have the possibility of recovering in tort for his employer’s fault, since that would then be allocated to the third party. This certainly would benefit employers, and to some extent plaintiffs — but third parties should not be assessed to supplement our system of workers’ compensation.
Mack Trucks, 841 S2d at 1115 (III) (a) (citations and emphasis omitted). See also Sullivan, 853 P2d at 882 (I) (D) (“There is nothing inherently fair about a defendant who is, for example, 10% at fault paying 100% of the loss.” (Citation and punctuation omitted)); Restatement (Third) of Torts: Apportionment Liability § B19 cmt. 1 (2000) (“The adoption of several liability, coupled with the submission of the nonparty employer for assignment of comparative responsibility, as provided in this Section, ends the unfairness to independent tortfea-sors. Each tort defendant is only responsible for its comparative share of plaintiff’s damages.”).
Nor would the assignment of fault to a nonparty employer eviscerate the role that subrogation plays in the workers’ compensation system, as Walker suggests. Under OCGA § 34-9-11.1 (b), if an employer or its insurer has at least partially paid its workers’ compensation liability to an injured employee, the employer or insurer may have a right of subrogation against damages that the employee recovers from a third party. But this right of subrogation is limited to the amount of certain benefits paid to the employee, and importantly, it is available only “if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.”[3] OCGA § 34-9-11.1 (b). The purposes of these provisions are to provide “a means for recouping the employer’s loss and to prevent a double recovery by the employee and to do substantial justice,” Southern R. Co. v. Overnite Transp. Co., 223 Ga. 825, 830 (6) (158 SE2d 387) (1967), while assuring “that the injured employee first be made whole.” North Bros. Co. v. Thomas, 236 Ga. App. 839, 840 (513 SE2d 251) (1999).
*302 No doubt, the right of subrogation may be further limited in some cases by an allocation of fault to a nonparty employer. After all, if fault is assigned to the nonparty employer, it will reduce the amount that the injured employee recovers in tort, thereby lessening the likelihood that the employee will receive enough compensation (apart from his workers’ compensation benefits) to give the employer a subrogation claim. There is nothing, however, about this reality that is so inequitable for employers that it would lead us to conclude that OCGA § 51-12-33 (c) was not meant to permit the allocation of fault to nonparty employers. After all, the idea that an employer should bear some cost (still limited, of course, to its liability for workers’ compensation benefits) for its own fault — as opposed to that cost being borne by another tortfeasor — is not an inherently unfair one. And for employers without fault, the allocation of fault to employers under OCGA § 51-12-33 (c) does not affect their right of subrogation in the least.[4] The allocation of fault to nonparty employers is not inconsistent with the limited right of subrogation under the Workers’ Compensation Act.[5]
Walker argues as well that the allocation of fault to a nonparty employer under OCGA § 51-12-33 (c) would expose employers to new and substantial litigation costs, against which, he says, they previously were shielded by virtue of their immunity from tort liability *303 under the Workers’ Compensation Act. We disagree. Under the exclusive remedy provisions of the Workers’ Compensation Act, the employer entirely avoids having to defend against tort litigation and remains immune from tort liability regardless of any assignment of fault pursuant to OCGA § 51-12-33 (c). No doubt, an employer may have to respond to requests for discovery that are relevant to its fault with respect to an injury to its employee, but employers long have been subject to discovery for other purposes in cases in which employees have been injured on the job. To begin, an employer is always subject to the discovery procedures of the Civil Practice Act in any administrative proceeding regarding a claim for workers’ compensation benefits. OCGA § 34-9-102 (d). More significant, even before enactment of OCGA § 51-12-33 (c), employers already were subject to nonparty discovery, see OCGA § 9-11-34 (c), related to claims by an employee against other alleged tortfeasors for workplace injuries, such as Walker’s product liability claims in this case against Tensor. Regardless of whether any fault could be assigned to the employer, parties to such cases might be expected to demand discovery of business records and other documents of an employer, depositions and trial testimony of managers and other employees, and perhaps access to the workplace for evaluation and testing of equipment. In a products liability action such as this, those discovery requests could have numerous purposes other than to discover fault on the part of the employer: supporting or refuting the elements of the employee’s tort action, as well as the potential defenses available to the non-employer defendant against the employee’s action, including the statute of repose, legal accident, contributory negligence, assumption of the risk, federal preemption, and the learned intermediary rule. See, e.g., Charles R. Adams III, Ga. Law of Torts §§ 25:8 through 25:10 (database updated December 2014); J. Kennard Neal, Ga. Products Liability Law, Chap. 11 (4th ed., database updated April 2015). The wide range of facts that the parties may seek to discover from the employer could include the dates that an allegedly defective product was delivered and installed in the workplace, warnings and directions about the use of the product, the maintenance history and any modifications of the product, other incidents concerning the product of which the employee would or could have been aware at the time of his injury, the work and disciplinary history of the employee, his training and experience with the product at issue and similar products, any misuse of the product by the employee, his condition just prior to the injury, and the notice that he provided about his injury. The allocation of fault to nonparty employers simply adds one additional subject about which employers may be subject to nonparty discovery.
*304 Accordingly, we see no reason to limit our interpretation of OCGA § 51-12-33 (c) in Zaldivar and prohibit a trier of fact from assigning fault to a nonparty employer that has immunity under the exclusive remedy provisions of the Workers’ Compensation Act. As we explained in Zaldivar, “the apportionment statute permits consideration, generally speaking, of the ‘fault’ of a tortfeasor, notwithstanding that he may have a meritorious affirmative defense or claim of immunity against any liability to the plaintiff.” 297 Ga. at 598 (1) (footnote omitted). “[W]e do not conclude that immune employers should be treated differently than other immune tortfeasors.” Ocasio, 33 A3d 1148 (II) (A) (3) (a). We, therefore, answer the certified question in the affirmative.

Certified question answered.

All the Justices concur, except Ben-ham and Hunstein, JJ., who dissent.

 Walker’s wife also sued Tensor for loss of consortium. For the purposes of this opinion, however, there is no need to distinguish between Walker and his wife, and so, we refer to both simply as “Walker.”

 In Zaldivar, 297 Ga. at 600 (1), n. 7, we distinguished jurisdictions, like Tennessee, “without statutory authority for the assignment of fault to nonparties.” (Citations omitted; emphasis in original.) For the same reason, we do not consider Carroll v. Whitney, 29 SW3d 14, 19 (Tenn. 2000), to he persuasive authority for departing from the general rule that responsibility should be assigned to at-fault employers under apportionment statutes. See Ocasio v. Fed. Express Corp., 33 A3d 1139, 1148 (II) (A) (3) (a) (N.H. 2011) (declining to follow Carroll for the proposition that immune employers should he exempt under New Hampshire’s apportionment statute). Moreover, it does not appear that in Tennessee, any potential unfairness is mitigated, as in Georgia, by a workers’ compensation statute that allows subrogation, which we discuss below, “only ... if the injured employee has been fully and completely compensated . . . .” OCGA § 34-9-11.1 (b).

 We observe at this point that in some jurisdictions, unlike Georgia, “employers may obtain full subrogation from the tort award, even though that award has been reduced by virtue of the employers’ own fault. While this result has been recognized as inequitable, one court[, Sullivan, 853 P2d at 883 (I) (D),] felt constrained to comply with a clear, if outdated, statutory mandate.” Restatement (Third) of Torts: Apportionment Liability § B19, reporter’s note to cmt. 1 (2000).

 We concede that an employer not really at fault might still be assigned fault in a tort case brought by the employee against a third party - a case to which the employer is not a party — and that the employer may suffer a limitation of its right of subrogation as a result. The possibility that the right of the employer to subrogation might be effectively impaired by proceedings to which the employer is not a party exists whether or not fault can be allocated to a nonparty employer. Indeed, that is exactly why the employer or its insurer has a statutory right to intervene in the proceedings for the purpose of protecting its right to subrogation. See OCGA § 34-9-11.1 (b).

 We also observe that the enactment of OCGA § 51-12-33 (c) did not affect the subrogation rights of employers in cases in which the plaintiff’s recovery is reduced by his own comparative negligence. It is true that, under OCGA § 51-12-33 (a) and (g), the plaintiff’s negligence reduces or eliminates his recovery in tort, thereby reducing the amount of the employer’s subrogation in the same way that assignment of fault to the employer effectively limits its subrogation rights. But comparative negligence had the same effect on the employer’s right to subrogation before the apportionment statute was enacted in 2005. Under Homebuilders Assn. of Ga. v. Morris, 238 Ga. App. 194, 196-197 (518 SE2d 194) (1999), comparative negligence could not be considered when determining whether the plaintiff had been fully and completely compensated for his losses pursuant to OCGA § 34-9-11.1 (b), and so the amount of the employer’s subrogation normally was less than it would have been if there had not been any comparative negligence and instead a higher percentage of fault had been assigned to the non-employer defendant. We conclude that assignment of responsibility under the apportionment statute to either an at-fault employer or a negligent plaintiff, and the corresponding effect on the employer’s right to subrogation, is consistent with the requirements of both the apportionment and the workers’ compensation statutes, resulting in a balanced and substantial justice in keeping with the purposes of the workers’ compensation system. See Southern R., 223 Ga. at 830 (6); North Bros., 236 Ga. App. at 840.