799 S.E.2d 468

John William MACHIN, Plaintiff,

v.

CARUS CORPORATION, Defendant.

Appellate Case No. 2015-000901
Opinion No. 27714

Supreme Court of South Carolina.

Heard December 1, 2015
Filed April 26, 2017

528

John S. Nichols, of Bluestein Nichols Thompson & Delgado, of Columbia; Frederick I. Hall, III, of the Rick Hall Law Firm, of Lexington; and John K. Koon, of Koon & Cook, of Columbia, for Plaintiff.

Gray T. Culbreath and Jessica A. Waller, of Gallivan White & Boyd, P.A., of Columbia; and J. Arthur Davidson and Sonja R. Tate, of Fulcher Hagler LLP, of Augusta, Georgia, for Defendant.

Alan Jones, of McGangus, Goudelock & Courie, of Myrtle Beach; and David C. Marshall, of Turner, Padget, Graham & Laney, of Columbia, for amici curiae South Carolina Defense Trial Attorneys' Association and DRI—The Voice of the Defense Bar.

JUSTICE KITTREDGE:

This Court accepted the following certified questions from the United States District Court for the District of South Carolina:

1. Under South Carolina law, when a Plaintiff seeks recovery from a person, other than his employer, for an injury sustained on the job, may the jury hear an explanation of why the employer is not part of the instant action?

2. Under South Carolina law, when a Plaintiff seeks recovery from a person, other than his employer, for an injury sustained on the job, may a defendant argue the

empty chair defense and suggest that Plaintiff's employer is the wrongdoer?

3. In connection with Question 2, if a defendant retains the right to argue the empty chair defense against Plaintiff's employer, may a court instruct the jury that an employer's legal responsibility has been determined by another forum, specifically, the South Carolina Workers' Compensation Commission?

4. Under South Carolina law, when a Plaintiff seeks recovery from a person, other than his employer, for an injury sustained on the job, may the Court allow the jury to apportion fault against the non-party employer by placing the name of the employer on the verdict form?

The certified questions come to this Court in the context of a pending post-trial motion in the federal court litigation. We answer these questions only in the abstract, without any suggestion as to the resolution of the post-trial motion, which remains in the capable hands of the esteemed and learned federal judge, Joseph F. Anderson.

As detailed below, we answer Questions 1, 2, and 3 "yes," provided a defense seeks to assign fault to the plaintiff's employer. We answer Question 4 "no."

## I.

Defendant Carus Corp. (Carus) is an international company that develops and sells chemical products for municipal and industrial applications. Defendant's products include a chemical called Totalox, which is an odor eliminator that, essentially, is designed as a deodorizer for sewer systems.[1] The Town of Lexington (Town) used Totalox in its sewer treatment plants. On April 13, 2010, Plaintiff John William Machin, a Town employee, was exposed to Totalox when a storage container valve broke during the delivery of Totalox to one of the Town's wastewater stations.[2] Plaintiff thereafter suffered reac-

---

1. More specifically, Totalox provides a food source for anaerobic bacteria in sewer systems that prevents the anaerobic bacteria from producing foul-smelling hydrogen sulfide.

2. As the Town's sewage treatment needs increased, so did the corresponding need for storage capacity to house Totalox. At the Town's

tive airways syndrome, which is also known as chemically induced asthma or obstructive lung disease.

As a result of his injuries, Plaintiff filed a workers' compensation claim and was awarded workers' compensation benefits. In August 2012, Plaintiff filed suit in federal court against Carus and several other defendants seeking recovery for his injuries which he alleged were caused by his exposure to Totalox. In addition to Carus, Plaintiff sued The Andersons (the "tolling" company that manufactured the finished Totalox product by compounding the proprietary chemical provided by Carus with its own stock of raw materials (calcium nitrate and water)); Fetter & Sons (the third-party company hired by The Andersons to deliver Totalox to the Town on the day of Plaintiff's injuries); and Terry Weiser (the delivery truck driver). Fetter & Sons and Weiser settled with Plaintiff in February 2013. Carus and The Andersons proceeded to trial in January 2015.

During pre-trial conferences, the parties argued about what, if anything, the federal court would tell the jury regarding Plaintiff's workers' compensation recovery. Ultimately, it appears the federal court held that Carus and The Andersons retained the right to make the so-called "empty chair" defense—asserting the Town's negligence was the sole proximate cause of Plaintiff's injuries; however, the parties were not allowed to mention workers' compensation, and the federal court did not instruct the jury regarding workers' compensation.

At trial, Carus took the position that Plaintiff's exposure was insufficient to have caused any permanent respiratory injury, that the other Town employees present were not injured, and that no one had previously claimed such an injury from Totalox exposure. Carus also presented evidence that it

---

request, Carus issued a proposal to install a large-volume storage tank at the relevant wastewater treatment site in September 2009; however, the Town declined to order the tank, opting instead to design and construct its own in-house system. The Town's employees devised a storage system using PVC pipes and fittings to connect fifteen portable containers. The Town did not consult Carus regarding the design of the storage system, and Carus had no role in determining the Town's procedures governing the container system. The valve that burst and allowed significant amounts of Totalox to escape was part of this Town-designed PVC storage system.

provided the Town with material safety data sheets (MSDS), on-product warning labels, and an informational data sheet, all of which warned of the dangers of exposure to Totalox and instructed that users should wear personal protective equipment, including respirators, in situations where exposure to mist could occur. Carus argued that both the Town and Plaintiff ignored these warnings and that this failure to heed warnings was the sole proximate cause of Plaintiff's injuries.

Shortly after jury deliberations began, the jury submitted the following question: "Why is the Town of Lexington not included in the lawsuit?" In response (and after lengthy discussion with the parties), the federal court informed the jury that they were to consider only the evidence presented and the court's instructions on the applicable law. While the jury continued deliberations, Plaintiff took a voluntary nonsuit as to The Andersons. The jury form was subsequently amended to remove reference to The Andersons, and the jury ultimately returned a defense verdict in favor of Carus.

Plaintiff thereafter filed a motion for a new trial arguing that the federal court erred in refusing any argument or jury instructions about workers' compensation while allowing Carus to argue its empty chair defense placing responsibility for Plaintiff's injuries on the Town. After receiving memoranda from the parties on the issues, the federal court determined that South Carolina law is unclear as to how the motion should be resolved. The federal court then certified the above questions to this Court and took the motion for a new trial under advisement pending this Court's consideration of these certified questions.

## II.

We answer the certified questions by analyzing two statutory schemes, the Workers' Compensation Act and the Uniform Contribution Among Tortfeasors Act.

### A.

The Workers' Compensation Act is a comprehensive scheme created to provide compensation to employees injured by accidents arising out of and in the course of their employment. *Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 69–

70, 267 S.E.2d 524, 526 (1980). "The Workers' Compensation Act was designed to supplant tort law by providing a no-fault system focusing on quick recovery, relatively ascertainable awards, and limited litigation." *Nicholson v. S.C. Dep't of Soc. Servs.*, 411 S.C. 381, 389, 769 S.E.2d 1, 5 (2015) (citing *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 115, 580 S.E.2d 100, 107 (2003)).

■ The concept of workers' compensation is "founded upon recognition of the advisability, from the standpoint of society as well as of employer and employee, of discarding the common law idea of tort liability in the employer-employee relationship and of substituting therefor the principle of liability on the part of the employer, regardless of fault, to compensate the employee, in predetermined amounts based upon his wages, for loss of earnings resulting from accidental injury arising out of and in the course of employment." *Parker*, 275 S.C. at 69–70, 267 S.E.2d at 526 (quoting *Case v. Hermitage Cotton Mills*, 236 S.C. 515, 530–31, 115 S.E.2d 57, 66 (1960)) (internal quotation marks omitted). "The employee receives the right to swift and sure compensation; the employer receives immunity from tort actions by the employee." *Id.* "This quid pro quo approach to [workers'] compensation has worked to the advantage of society as well as the employee and the employer." *Id.*

Section 42-1-540 of the Workers' Compensation Act is an exclusivity provision, disallowing tort suits against the employer and limiting the injured employee's rights and remedies to those provided by the Workers' Compensation Act.

The rights and remedies granted by this title to an employee … shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service[,] or death.

S.C. Code Ann. § 42-1-540 (2015).

■ However, by its terms, the exclusive remedy provision of the Workers' Compensation Act limits the employee's remedy only "as against his employer." Thus, where the injury is due to a third party's negligence, a plaintiff may collect workers' compensation benefits *and* sue the third party re-

sponsible for causing the injuries. *Mendenall v. Anderson Hardwood Floors, LLC*, 401 S.C. 558, 562, 738 S.E.2d 251, 253 (2013). Although an employee may have a right to bring suit against a third party, the *amount* of compensation paid by the employer "shall not be admissible as evidence in any action brought to recover damages." S.C. Code Ann. § 42-1-570 (2015).

## B.

The second statutory scheme at issue here is the Uniform Contribution Among Tortfeasors Act, through which the legislature abolished joint and several liability. S.C. Code Ann. §§ 15-38-10 to -70 (2005 & Supp. 2015). This Act provides the apportionment of percentages of fault is to be determined as follows:

(C) The jury, or the court if there is no jury, shall:

(1) specify the amount of damages;

(2) determine the percentage of fault, if any, of plaintiff and the amount of recoverable damages under applicable rules concerning "comparative negligence"; and

(3) upon a motion by at least one defendant, where there is a verdict under items (1) and (2) above for damages *against two or more defendants* for the same indivisible injury, death, or damage to property, specify in a separate verdict under the procedures described at subitem (b) below the percentage of liability that proximately caused the indivisible injury, death, damage to property, or economic loss from tortious conduct, as determined by item (1) above, that is *attributable to each defendant whose actions are a proximate cause of the indivisible injury, death, or damage to property.* In determining the percentage attributable to *each defendant*, any fault of the plaintiff, as determined by item (2) above, will be included so that *the total of the percentages of fault attributed to the plaintiff and to the defendants must be one hundred percent.* In calculating the percentage of fault attributable to *each defendant*, inclusion of any percentage of fault of the plaintiff (as determined in item (2) above) shall not reduce the amount of plaintiff's recoverable damages (as determined under item (2) above).

. . . .

(D)  A defendant shall retain the right to assert that another *potential tortfeasor*, whether or not a party, contributed to the alleged injury or damages and/or may be liable for any or all of the damages alleged by any other party. S.C. Code Ann. § 15-38-15(C)–(D) (Supp. 2015) (emphasis added).

## III.

Plaintiff claims that, under the Workers' Compensation Act, only the amount of compensation paid by an employer is inadmissible and that other issues involving workers' compensation are admissible. Plaintiff maintains that Carus brought into question, via the empty chair defense, the Town's alleged negligence by offering evidence that the Town was responsible for Plaintiff's injuries for: (1) using an inadequate storage system to store and offload Totalox; (2) not informing Plaintiff of the hazards associated with Totalox; and (3) not providing MSDS-based training regarding the safe handling of the product as required by federal occupational health and safety regulations. Consequently, Plaintiff argues that fairness necessitates explaining to the jury why he did not sue the Town, along with the nature of workers' compensation and the limits on recovery under the Workers' Compensation Act. Plaintiff speculates that the jury delivered a defense verdict because the jurors reasoned that Plaintiff already received full compensation for his injuries via workers' compensation.

Carus counters that the evidence bearing on the Town's conduct and legal duties under federal occupational health and safety regulations were directly relevant to its defenses. Carus cites numerous cases from other jurisdictions that allow defendants to argue the empty chair defense notwithstanding disallowing apportionment of fault to immune, non-party employers. *See, e.g., Carriere v. Cominco Alaska, Inc.*, 823 F.Supp. 680, 692 (D. Alaska 1993) (holding that a defendant may establish through admissible evidence that he was either not negligent or was not a proximate cause of the plaintiff's injury but disallowing partial allocation of fault to the employer); *Downey v. W. Cmty. Coll. Area*, 282 Neb. 970, 808 N.W.2d 839, 853 (2012) (holding that a defendant can point to the

negligence of the employer and claim that the employer was the sole cause of the accident causing the plaintiff's injuries but finding the defendant may not reduce his or her own liability by seeking to have some of the fault apportioned to the employer). Carus, therefore, asserts that the federal court did not err in allowing it to argue the empty chair defense or in charging the jury regarding its defenses that sought to blame the Town for Plaintiff's injury.

Yet Carus further argues that the exclusivity of the workers' compensation remedy, Plaintiff's receipt of workers' compensation benefits, and the no-fault workers' compensation framework were wholly collateral and irrelevant to the only issue before the jury—whether Carus was legally responsible for Plaintiff's injury. Carus concludes that any jury charge or explanation addressing workers' compensation would confuse, mislead, or distract the jury from the real issue of the case.

## A.

The certified questions are intertwined, particularly Questions 1, 2, and 3. The certified questions require this Court to confront the tension between laudable and competing policy goals embedded in our workers' compensation and contribution-among-tortfeasors statutes. More to the point, the certified questions raise the specter of the seemingly irreconcilable intersection of tort-based products liability principles and South Carolina's no-fault workers' compensation framework—the dilemma between the exclusivity and limitations of workers' compensation as the remedy for on-the-job injuries, the potential for third parties to bear a disproportionate share of liability in tort, and the employer's central role in many workplace product-related injuries.[3]

---

**3.** "[S]ome insurance industry studies estimate that employers are 'at fault' in approximately 50% of employees' product[-]related suits." Thomas A. Eaton, *Revisiting the Intersection of Workers' Compensation and Product Liability: An Assessment of a Proposed Federal Solution to an Old Problem*, 64 Tenn. L. Rev. 881, 886 (1997) (noting that employers often "select workplace products, determine the sorts of safety guards or other protective devices that are placed on the product, train and supervise employees, maintain equipment, and communicate warnings and instructions," and arguing that this degree of involvement suggests that employers are at least partially responsible for many workplace product-related injuries).

Professor Larson understood well the dilemma presented in this situation: "Perhaps the most evenly[ ] balanced controversy in all of compensation law" is how to accommodate the employee's interest in full recovery, the employer's interests in limited liability and subrogation, and the third party's interest in reducing its tort liability, particularly where the employer was a cause-in-fact of the employee's injuries. 11 Lex K. Larson, Larson's Workers' Compensation § 121.01, at 121-4 (2015).

Because of the closeness of the issue, the number and variety of attempted solutions, both legislative and judicial, has been nothing short of breathtaking, and the end is by no means in sight. Even when deliberate legislative choices have been made, that has not necessarily been the end of the matter.... Indeed, few areas of law have evoked such daring displays of uninhibited judicial activism, with centuries-old doctrines being bulldozed out of the way to clear a path for an "equitable" compromise.

Arthur Larson, *Third-Party Action over Against Workers' Compensation Employer*, 1982 Duke L.J. 483, 485–86.

In light of these competing concerns, the task before the Court is "how to apply these two different systems in a way that gives effect to the major policies of each one without sacrificing important policies of the other," while remaining faithful to legislative intent in doing so. Thomas A. Eaton, *Revisiting the Intersection of Workers' Compensation and Product Liability: An Assessment of a Proposed Federal Solution to an Old Problem*, 64 Tenn. L. Rev. 881, 887 (1997).

Beginning with workers' compensation law, "it is generally held that an employee cannot be met with a defense that the employer's negligence contributed to the injury." Lex K. Larson, *supra*, § 120.02[3], at 120-10 (explaining the majority rule is that an employer's negligence may not be a defense to a plaintiff employee's third-party tort suit, yet noting that a growing number of states, either by judicial decision or statutory amendment, have ruled that a third party may be permitted to plead the employer's concurring negligence as a *pro tanto* defense to the extent of the workers' compensation benefits paid to the employee or to the extent of the employer's proportional fault in a comparative negligence jurisdic-

tion). That being said, the Court must give efficacy to the terms of section 15-38-15(C) and (D) and, to the extent possible, do so in concert with the Workers' Compensation Act. We believe there is an approach which meaningfully harmonizes these statutory schemes, as set forth by the legislature, in the Workers' Compensation Act and the Contribution Among Tortfeasors Act.

In this regard, the decision of the Tennessee Supreme Court in *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252 (Tenn. 1997), is instructive. The plaintiff in *Snyder* was injured while working at a plant where machines were used to compress cotton into bales. When one of the machines stopped mid-cycle, the plaintiff stuck his arm into the machine to remove loose cotton covering a protective switch. The plaintiff's arm was inserted into the machine through an opening where a metal panel or barrier normally would have been bolted. While the plaintiff's arm was inside the machine, the machine engaged, injuring plaintiff's arm. The plaintiff maintained he had not removed the metal panel and he did not know who had. *Id.* at 253. The plaintiff filed suit in federal court against the companies that manufactured and sold the machine (collectively "defendants"), seeking recovery for his injuries based on theories of negligence, breach of warranty, and strict liability. Plaintiff claimed the defendants negligently designed the machine, negligently failed to warn of the machine's dangers, and were liable for breach of warranties. *Id.* at 253–54.

In response, the defendants argued the machine in question was state-of-the-art and that it was neither defective nor unreasonably dangerous when it left their control. Rather, the defendants asserted that the plaintiff's employer altered or failed to maintain the machine by removing the bolted metal panel covering the opening through which the plaintiff stuck his arm, thereby constituting an intervening act of negligence that caused the plaintiff's injuries. In other words, according to the defendants, it was the employer's conduct that rendered the machine defective or unreasonably dangerous. Unsure of whether Tennessee law precluded defendants from presenting proof that the plaintiff's injuries were caused by the acts or omissions of the employer, the federal court certified two questions to the Supreme Court of Tennessee. *Id.* at 254.

In answering those questions, the Tennessee Supreme Court held that the defendants were permitted to introduce evidence at trial that the plaintiff's employer's alteration, change, improper maintenance, or abnormal use of the defendants' product was a cause in fact of the plaintiff's injuries, but the jury would not be permitted to assess fault against the non-party employer. *Id.* at 253. In reaching this distinction, the court explained:

[T]he defendants here[ ] wanted the jury to assess fault against the employer by arguing that the employer's actions were the proximate, or legal, cause of the plaintiff's injuries. Of course, the employer cannot be found to be·the proximate, or legal, cause of the plaintiff's injuries because the employer is immune from tort liability under [the exclusivity provision of the Tennessee workers' compensation act]. By enacting [the exclusivity provision], the legislature has already determined that for policy reasons the employer may not be the legal cause of the plaintiff's injuries.

This is not to say, however, that the employer cannot be found by the trier of fact to have been a cause in fact of the plaintiff's injuries. If the rule were otherwise, the defendants would effectively be precluded from presenting a defense. A defense that the product was not defective or unreasonably dangerous when it left the defendants' control would not be credible unless the defendants were permitted to introduce evidence as to what actually happened to the product leading up to the incident that injured the plaintiff. Excising the employer from that discussion would be tantamount to drawing a line which would make discussion of the case to be tried difficult, if not impossible.

*Id.* at 256. As to the specific facts, the *Snyder* court explained that under the plaintiff's approach, "the defendants would be restricted from presenting evidence that the plaintiff's employer altered, changed, or improperly maintained the cotton baler that injured the plaintiff by removing the metal panel that covered the area into which the plaintiff stuck his arm." *Id.* at 256 n.7. The court further explained:

The end result would be that the jury would not hear evidence of the true facts surrounding the product that caused the plaintiff's injuries but, nonetheless, be asked to determine fault and hence liability for damages. Prohibiting

the introduction of such evidence could result in a defendant, who was not a cause in fact of the plaintiff's injuries, being required to pay for the harm anyway.

*Id.* at 256.

For those reasons, the Tennessee Supreme Court found the jury shall be permitted to consider "all evidence relevant to the actions of the employer with respect to the defendants' product in assessing whether the plaintiff has met his burden of establishing the elements necessary to recover against the defendants." *Id.* at 253. The court further explained:

Put another way, the jury may consider all evidence relevant to the event leading up to the incident that injured the plaintiff. *The defendants may not, however, ask the jury to assign fault to the employer. That is, the defendants may not take the legal position that the employer's actions were the legal cause of the plaintiff's injuries.* The jury should be instructed that it may consider the actions of the employer only in assessing whether the plaintiff has met his burden of establishing the elements necessary to recover against the defendants. Also, the jury should be instructed that it may not, in making that determination, assess fault against the employer. Finally, the trial judge should give an instruction that lets the jury know that the employer's legal responsibility will be determined at a later time or has already been determined in another forum.

*Id.* at 257 (emphasis added).

In so holding, the *Snyder* court emphasized that distinguishing between cause in fact and proximate cause "is not merely an exercise in semantics." *Id.* at 256 n.6. The court explained:

The terms are not interchangeable. Although both cause in fact and proximate, or legal, cause are elements of negligence that the plaintiff must prove, they are very different concepts. Cause in fact refers to the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury or loss. Thus, cause in fact deals with the "but for" consequences of an act. The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct. In contrast, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been

established. Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, [and] precedent. . . .

*Id.* (citations omitted).

As Tennessee jurisprudence has continued to evolve, the Tennessee Supreme Court has acknowledged the advent of comparative fault and recognized that doctrine is "designed to create a tighter fit between liability and fault." *Carroll v. Whitney*, 29 S.W.3d 14, 19 (Tenn. 2000). However, the Tennessee Supreme Court has nevertheless continued to reaffirm its decision in *Snyder*, emphasizing that the refusal to allow a jury to find an employer to be a proximate cause of a plaintiff's injuries is a rule "uniquely applicable to the allocation of fault to an employer when the employer's liability is governed by the Workers['] Compensation Law." *Id.* at 19 (holding a jury may attribute fault to immune non-parties outside the workers' compensation context). The Tennessee Supreme Court has observed that the continued efficacy of *Snyder* is justified by the fact that, absent *Snyder*'s holding, plaintiffs would be subject to a double reduction of their recovery against third parties who contributed to their on-the-job injuries. *Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 147 (Tenn. 2007) (explaining the first reduction would occur when the jury apportioned fault to the employer and the second would occur when the workers' compensation insurance carrier exercised its right to subrogation against the plaintiff's recovery from the third party).

### B.

We find the *Snyder* approach to be workable and aligned with South Carolina law. Borrowing from *Snyder* and its framework, we answer the first three certified questions as follows:

A defendant may introduce relevant evidence regarding the claim(s) asserted in the Complaint, including any viable defense included in the Answer. If no defense seeks to assign fault to the plaintiff's employer, there shall be no reference, discussion, evidence, or legal argument relating in any manner to the matter of workers' compensation. If,

however, a defendant asserts a defense that assigns fault for the plaintiff's injuries to the plaintiff's employer, the defendant shall, under the well-established "empty chair" defense, have the right to present such evidence and require the fact-finder to consider whether the employer's actions were the cause of the plaintiff's injuries. Of course, the employer cannot be found to be the proximate, or legal, cause of the plaintiff's injuries because the employer is immune from tort liability under the exclusivity provision of the South Carolina Workers' Compensation Act. By enacting the exclusivity provision, the legislature has already determined that the employer may not be legally responsible in tort for the plaintiff's injuries.

This is not to say, however, that the employer cannot be found by the fact-finder to have been responsible for the plaintiff's injuries. If the rule were otherwise, the defendants would effectively be precluded from presenting a defense. A defense that the product was not defective or unreasonably dangerous when it left the defendants' control would not be credible unless the defendants were permitted to introduce evidence as to what actually happened to the product leading up to the incident that injured the plaintiff. Excising the employer from that discussion would be tantamount to drawing a line which would make discussion of the case to be tried difficult, if not impossible.

Under no circumstances may reference to the amount of workers' compensation benefits be made at trial. S.C. Code Ann. § 42-1-570. Upon a party's request, or if responsive to a question from the jury, the jury shall be charged on the applicable law. We suggest the following instruction:

> The plaintiff is prohibited from suing his employer in this court. At the time of the incident, the plaintiff was employed and the incident occurred during the course and scope of his employment. This is governed by workers' compensation laws, and an employer's responsibility, if any, for an employee's injuries will be determined, or has been determined, in another forum. A workers' compensation claim is not before you and you shall not give it any consideration in reaching a verdict in this case. However, the matter of the employer's alleged fault in causing the injury has been raised by the defendant, and it is proper

for you to consider the employer's actions, but only insofar as you assess and determine whether the plaintiff has met his burden of proving the elements of the claim(s) necessary to recover against the defendant.

## C.

The interplay of the certified questions is evident, as the foregoing discussion foreshadows our answer to the final question—whether the jury may be permitted to apportion fault against a non-party employer by placing the name of the employer on the verdict form. We answer the question in the negative, and we do so as a function of interpreting section 15-38-15 and honoring legislative intent.

Carus presents an argument with equitable appeal, that is, because South Carolina abolished joint and several liability in 2005, allocation of a percentage of fault to the non-party employer is necessary to ensure that a defendant, if held liable, will be required to pay only damages commensurate with its degree of fault. We do not minimize Carus's compelling policy argument, which the dissent adopts, but we are ultimately bound by legislative intent.

In this regard, Carus argues that subsection (D) of section 15-38-15 should be construed to allow the jury to attribute fault to the non-party employer by placing the name of the employer on the verdict form. *See* S.C. Code Ann. § 15-38-15(D) ("A defendant shall retain the right to assert that another *potential tortfeasor*, whether or not a party, contributed to the alleged injury or damages and/or may be liable for any or all of the damages alleged by any other party." (emphasis added)). We find a plain reading of subsection (D), in concert with subsection (C), requires that we reject this argument.

Specifically, subsection (C) refers to "two or more defendants," "each defendant," and "the defendants." *See id.* § 15-38-15(C) ("The jury, or the court if there is no jury, shall ... specify the amount of damages; [ ] determine the percentage of fault, if any, of [the] plaintiff and the amount of recoverable damages[; and] ... where there is a verdict ... for damages against *two or more defendants* for the same indivisible injury, death, or damage to property, specify in a separate verdict ...

the percentage of liability that proximately caused the indivisible injury, death, damage to property, or economic loss from tortious conduct ... that is attributable to *each defendant* whose actions are a proximate cause of the indivisible injury, death, or damage to property. In determining the percentage attributable to *each defendant,* any fault of the plaintiff ... will be included so that the total of the percentages of fault attributed to the plaintiff and to *the defendants* must be one hundred percent." (emphasis added)). There is no basis in our law for a plaintiff or a defendant to add the plaintiff's employer as a party defendant.

In contrast, subsection (D) refers to a "potential tortfeasor." In prescribing the allocation of fault among parties and the format of the jury form, if the legislature intended to allow non-parties to be included on the jury verdict form, it would have used terms other than "defendant" and "defendants" in drafting subsection (C), just as it used the different term—potential tortfeasor—in subsection (D). The legislature's use of two separate terms makes clear that it intended two separate meanings. *See Powerex Corp. v. Reliant Energy Servs., Inc.,* 551 U.S. 224, 232, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007) ("A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning."); *Eagle Container Co. v. Cnty. of Newberry,* 379 S.C. 564, 570, 666 S.E.2d 892, 895–96 (2008) (" 'Words in a statute must be construed in context,' and 'the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute.' " (quoting *S. Mut. Church Ins. Co. v. S.C. Windstorm & Hail Underwriting Ass'n,* 306 S.C. 339, 342, 412 S.E.2d 377, 379 (1991))).

Giving the words "defendant" and "defendants" a plain and ordinary reading, we find that subsection (C) allows only a "defendant" or "defendants" to be listed on the jury form and included in the allocation of fault. Moreover, given the legislature's use of the term "defendant" in subsection (C), it is reasonable to conclude that a "potential tortfeasor" under subsection (D) cannot include the plaintiff's employer. To be sure, the legislature could characterize a plaintiff's employer in a way that would permit inclusion of the employer on the verdict form, but the exclusivity provision of the Workers'

Compensation Act forecloses the possibility of an employer ever being a "potential tortfeasor." To construe a "potential tortfeasor" as including the plaintiff's employer would create an irreconcilable conflict with the language and purpose of our Workers' Compensation Act and would be inconsistent with this Court's obligation to harmonize statutory schemes whenever such a construction is consistent with legislative intent. *See Wilkinson v. E. Cooper Cmty. Hosp., Inc.*, 410 S.C. 163, 173, 763 S.E.2d 426, 432 (2014) (explaining the proper construction of two statutes is that which "harmonizes the two statutes and is consistent with the intent of the legislature").

And finally, we respectfully reject Carus's reliance on a recent decision from the Supreme Court of Georgia, *Walker v. Tensor Machinery, Ltd.*, 298 Ga. 297, 779 S.E.2d 651 (2015), which reached a contrary result. Interpreting the relevant provisions of Georgia law, the court held in *Walker* that "a trier of fact [may] assign[ ] fault to a nonparty employer that has immunity under the exclusive remedy provisions of the Workers' Compensation Act." *Id.* at 656. Notably, the court in *Walker* based its decision on a Georgia statute which "directs the trier of fact to 'consider the fault of *all persons or entities* who contributed to the alleged injury or damages.' " *Id.* at 652 (emphasis added) (quoting OCGA § 51-12-33(c) (expressly allowing for assessment of fault against a nonparty "regardless of whether the person or entity was, or could have been, named as a party to the suit")). In light of this crucial language in Georgia's statutory apportionment scheme, the result in *Walker* is understandable.

In stark contrast, our legislature's use of the narrower term "defendant" in section 15-38-15(C) of the South Carolina Code evinces a legislative intent to allow allocation of fault among only the parties to a lawsuit—not against nonparties. Thus, we find that, under section 15-38-15(D), a nonparty may be included in the allocation of fault only where such person or entity is a "potential tortfeasor," which, under our law, excludes the plaintiff's employer who is immune from suit under section 42-1-540 of the Workers' Compensation Act.

## IV.

The certified questions raise difficult issues, to be sure. We have answered the questions based on our discernment of

legislative intent, for these matters are largely policy decisions for our legislature. *See Widenhouse v. Colson*, 405 S.C. 55, 58, 747 S.E.2d 188, 190 (2013) ("The primary source of the declaration of the public policy of the state is the General Assembly. . . ." (quoting *Citizens' Bank v. Heyward*, 135 S.C. 190, 204, 133 S.E. 709, 713 (1925)) (internal quotation marks omitted)). We trust the General Assembly will respond to this opinion if it disagrees with our interpretation of the statutes.

**CERTIFIED QUESTIONS ANSWERED.**

BEATTY, C.J., HEARN, J., and Acting Justice Jean H. Toal, concur. Acting Justice Costa M. Pleicones, dissenting in a separate opinion.

ACTING JUSTICE PLEICONES:

I respectfully dissent. As explained in *Smith v. Tiffany*,[4] I would hold that in order to give effect to the intent of the General Assembly in enacting the 2005 amendments to the South Carolina Contribution Among Tortfeasors Act, we must permit a jury or fact-finder to make a fair and logical apportionment of 100% of fault. In my opinion, such fair apportionment requires allowing the defendant to argue to the fact-finder that fault lies with an otherwise immune third-party, and allowing the fact-finder to apportion **fault** to that party, regardless of that party's immunity from **liability**. Further, in my view, the fact that the immune third-party's liability has been determined in another forum is irrelevant to the General Assembly's policy decision that in a tort lawsuit, the fact-finder must apportion 100% of the fault among all potentially responsible parties. In short, I would answer Certified Question One "No," as I would allow the employer to be a party to the action solely for the purpose of apportioning fault. For the reasons discussed above, I would answer Certified Questions Two and Four "Yes." And finally, I would answer Certified Question Three "No," as I find the question not germane to the apportionment of fault among all potentially responsible parties.

---

4. Op. No. 27715, 419 S.C. 548, 799 S.E.2d 479, 2017 WL 1489053 (Sup. Ct. filed April 26, 2017).