548

799 S.E.2d 479

Walter SMITH, Respondent,

v.

Norman K. TIFFANY, Individually, Brown Trucking Company
and Brown Integrated Logistics, Appellants,

and

Brown Trucking Company and Brown
Integrated Logistics, Appellants,

v.

Corbett James Mizzell, III, Respondent.

Appellate Case No. 2015-001159
Opinion No. 27715

Supreme Court of South Carolina.

Heard May 18, 2016
Filed April 26, 2017

550

T. McRoy Shelley, III, and Steven T. Moon, both of Rogers Townsend & Thomas, PC, of Columbia for Appellants.

Allan P. Sloan, III, and Kristen B. Fehsenfeld, both of Pierce, Herns, Sloan & Wilson, LLC, of Charleston, Ralph Kennedy, of Kennedy Law Firm, LLC, of Batesburg-Leesville and Robert T. King, of King, Love & Hupfer, LLC, of Florence, for Respondents.

Bert G. Utsey, III, of Peters Murdaugh Parker Eltzroth & Detrick, PA, of Walterboro and John S. Nichols of Bluestein, Nichols, Thompson & Delgado, LLC, of Columbia, for Amicus Curiae The South Carolina Association for Justice.

JUSTICE KITTREDGE:

Appellants appeal from a trial court order granting Respondent Corbett Mizzell summary judgment, thereby dismissing Appellants' third party complaint.[1] We affirm.

The underlying dispute arises from a motor vehicle accident in December 2012 in Saluda County in which Respondent Walter Smith was injured. Smith settled with Mizzell for the policy limits of Mizzell's liability coverage in exchange for a covenant not to execute. Smith then sued Appellants, claiming Appellants' negligence was a proximate cause of the accident. The issue before this Court stems from Appellants' efforts to have Mizzell added as a defendant. In the South Carolina Contribution Among Joint Tortfeasors Act (Act), the legislature abrogated pure joint and several liability for tortfeasors

---

1. Appellants also appeal a trial court order granting Respondent Walter Smith's motion to quash Appellants' notice of deposition of Smith. We decline to address this issue because a discovery order is ordinarily not immediately appealable, and the issue "lack[s] a sufficient nexus or companionship to justify this Court's exercise of immediate appellate review." *Brown v. Cnty. of Berkeley*, 366 S.C. 354, 362 n.5, 622 S.E.2d 533, 538 n.5 (2005) (recognizing courts may accept appeals of interlocutory orders not ordinarily immediately appealable when appealed with a companion issue proper for review, but declining to so where the issues appealed lack a sufficient nexus); *see also Grosshuesch v. Cramer*, 377 S.C. 12, 31, 659 S.E.2d 112, 122 (2008) (noting discovery orders are interlocutory and not immediately appealable).

who are less than fifty percent at fault. The Act directs the fact-finder to apportion one-hundred percent of the fault between the plaintiff and "each defendant whose actions are the proximate cause of the indivisible injury." S.C. Code Ann. § 15-38-15(C)(3) (Supp. 2016).

Appellants urged the trial court to construe the Act, with a helping hand from our rules of civil procedure, to permit the addition of Mizzell as a defendant. The trial court rejected Appellants' various arguments and, in granting Mizzell summary judgment, applied the Act as written. In affirming the trial court, we are likewise constrained by the plain meaning of the unambiguous language in the Act. While we appreciate the equity-driven argument of Appellants, we must honor legislative intent as clearly expressed in the Act, lest we run afoul of separation of powers.

## I.

This case arises out of an automobile collision that occurred on U.S. 178 in Saluda County in December 2012. Defendant Norman Tiffany was a commercial driver employed by Brown Trucking Co. (Brown Trucking) and Brown Integrated Logistics, Inc. (Brown Logistics), which owned and operated Tiffany's commercial vehicle. On the morning of the accident, Tiffany's commercial vehicle was disabled and parked along the shoulder of U.S. 178, adjacent to the exit of a gas station. Mizzell had stopped at the gas station, and as he attempted to exit the parking lot, his view of oncoming traffic was obstructed by Tiffany's truck positioned alongside the highway. According to Mizzell, because the truck was obstructing his view, he "eased forward to get a better view of oncoming traffic," and at that point his vehicle collided with the vehicle of Respondent Walter Smith who was traveling down U.S. 178.

Mizzell's liability carrier tendered the limits of Mizzell's liability policy to Smith. In return, Smith signed a covenant not to execute in favor of Mizzell. Thereafter, Smith filed suit against Tiffany, Brown Trucking, and Brown Logistics, alleging his injuries were proximately caused by Tiffany's negligent positioning of the commercial motor vehicle which completely obstructed the view of vehicles attempting to exit the gas station. Smith alleged that since Tiffany was acting within the

course and scope of his employment at the time of the accident, Brown Trucking and Brown Logistics were liable under the doctrine of respondeat superior. In addition to claiming Tiffany was negligent, Smith's complaint also alleged three other causes of action specifically against Brown Trucking and Brown Logistics: (1) negligent entrustment; (2) negligent hiring, supervision, and retention; and (3) negligent maintenance. Essentially, Smith alleged Brown Trucking and Brown Logistics were negligent in entrusting Tiffany with a commercial motor vehicle despite knowing Tiffany lacked proper training, experience, and knowledge of state and federal laws governing the parking and standing of commercial motor vehicles and that Brown Trucking and Brown Logistics were negligent in failing to ensure the commercial motor vehicle Tiffany drove was properly inspected and maintained to ensure the vehicle's hazard equipment functioned appropriately.

In their answer, Brown Trucking and Brown Logistics (collectively "Appellants") raised, in a shotgun approach, numerous affirmative defenses seeking to have Mizzell added as a defendant, including "Fault of Others" and "Failure to Join Indispensable Party/Rule 19 SCRCP." Appellants also asserted a third-party complaint under Rule 14, SCRCP, naming Mizzell as a third-party defendant. The gist of Appellants' third-party claims was that Mizzell was responsible for a significant portion of the plaintiff's injuries and that Appellants were therefore entitled to a determination of Mizzell's proportion of the fault, even though Mizzell had already settled with the plaintiff and was immune from further liability. Appellants' third-party complaint offered several alternative theories to justify apportioning fault to Mizzell: (1) a declaratory judgment cause of action seeking a determination as to Mizzell's portion of liability; (2) a standalone cause of action under section 15-38-15 of the Act seeking apportionment of fault to Mizzell; (3) joinder of Mizzell as an indispensable party under Rule 19, SCRCP; (4) third-party negligence under Rule 14, SCRCP; and (5) the due process clauses of the United States and South Carolina constitutions. Appellants concede Mizzell did not breach any duty of care owed to them; rather, Appellants assert they are entitled to apportionment based on an independent contribution claim against Mizzell.

Mizzell filed a motion for summary judgment as to Appellants' third-party claims. Specifically, Mizzell contended he was entitled to judgment as a matter of law on Appellants' third-party claims because he neither owed nor breached any duty to Appellants as third-party plaintiffs. Mizzell further contended that section 15-38-50 of the Act discharged him a settling tortfeasor from liability for contribution to any other tortfeasor.

The trial court granted summary judgment and dismissed the third-party claims against Mizzell. As to the third-party negligence claim, the trial court found Mizzell was entitled to judgment as a matter of law because there was no evidence that Mizzell breached any duty owed to Appellants or that Appellants suffered any damages purportedly caused by Mizzell. The trial court further found there was no basis for adding Mizzell as a party, reasoning that Mizzell's inclusion in the action was not necessary for the just adjudication of Smith's claims under Rule 19, SCRCP, that the third-party complaint was not proper under Rule 14, SCRCP, and that Appellants' due process rights were not violated by the inability to join Mizzell or include him on the verdict form for purposes of allocation. This direct appeal followed.

## II.

■ On appeal, Appellants contend the trial court erred in failing to permit Mizzell to be named as a party and included on the verdict form so as to enable the jury to include Mizzell in the apportionment of fault for the accident. Appellants contend their claim derives from the statutory language added to the Act in 2005. At the outset, we note Appellants do not contend that any provision of the Act is ambiguous.

■ It is axiomatic that statutory interpretation begins (and often ends) with the text of the statute in question. *See Timmons v. S.C. Tricentennial Comm'n*, 254 S.C. 378, 401, 175 S.E.2d 805, 817 (1970) ("If a statute is clear and explicit in its language, then there is no need to resort to statutory interpretation or legislative intent to determine its meaning."); *see also Transp. Ins. Co. v. S.C. Second Injury Fund*, 389 S.C. 422, 429, 699 S.E.2d 687, 690 (2010) ("The text of a statute as drafted by the legislature is considered the best evidence of

the legislative intent or will." (citing *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000))). Absent an ambiguity, there is nothing for a court to construe, that is, a court should not look beyond the statutory text to discern its meaning. "[T]here is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning" unless a statutory provision is ambiguous. *Paschal v. State Election Comm'n,* 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995) (citing *Miller v. Doe,* 312 S.C. 444, 441 S.E.2d 319 (1994)); *see also Tilley v. Pacesetter Corp.,* 355 S.C. 361, 373, 585 S.E.2d 292, 298 (2003) (observing that unless a statute is ambiguous, "the application of standard rules of statutory interpretation is unwarranted"). Only "[w]here the language of an act gives rise to doubt or uncertainty as to legislative intent" may the construing court "search for that intent beyond the borders of the act itself." *Kennedy v. S.C. Ret. Sys.,* 345 S.C. 339, 348, 549 S.E.2d 243, 247 (2001) (citing *Lite House, Inc. v. J.C. Roy Co.,* 309 S.C. 50, 53, 419 S.E.2d 817, 819 (Ct. App. 1992)).

In light of these well-established rules of statutory interpretation, we are unwilling to accept Appellants' invitation to look outside the text of the Act to justify the assumption that the legislature's use of differing terms—"defendants" and "potential tortfeasors"—in section 15-38-15 was not deliberate or that those words mean anything other than what they say. *See Hodges,* 341 S.C. at 87, 533 S.E.2d at 582 ("If the legislature's intent is clearly apparent from the statutory language, a court may not embark upon a search for it outside the statute." (citing *Abell v. Bell,* 229 S.C. 1, 91 S.E.2d 548 (1956))); *see also CFRE, LLC v. Greenville Cty. Assessor,* 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) ("[T]he words found in the statute [must be given] their 'plain and ordinary meaning ' " and "if the words are unambiguous, we must apply their literal meaning." (quoting *Sloan v. Hardee,* 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007))).

We acknowledge that achieving a more fair apportionment of damages among joint tortfeasors was one of the policy goals underlying the legislature's enactment of the Act. We disagree that fair apportionment was the *only* underlying policy goal. Indeed, when the Act is read as a whole, with each section and subsection given effect, it is apparent that the

legislature was not solely attempting to protect nonsettling defendants. Rather, the legislature was attempting to strike a fair balance for all involved—plaintiffs and defendants—and to do so in a way that promotes and fosters settlements. *See Riley v. Ford Motor Co.,* 414 S.C. 185, 196, 777 S.E.2d 824, 830 (2015) ("[T]he Act represents the Legislature's determination of the proper balance between preventing double-recovery and South Carolina's 'strong public policy favoring the settlement of disputes.'" (quoting *Chester v. S.C. Dep't of Pub. Safety,* 388 S.C. 343, 346, 698 S.E.2d 559, 560 (2010))); *Centex Int'l, Inc. v. S.C. Dep't of Revenue,* 406 S.C. 132, 139, 750 S.E.2d 65, 69 (2013) ("'[T]he statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect.'" (quoting *S.C. State Ports Auth. v. Jasper County,* 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006))); *see also* S.C. Code Ann. § 15-38-50(2) (2005 & Supp. 2016) (providing that a settling tortfeasor, by virtue of his good-faith settlement with the claimant, is not liable for contribution to any other tortfeasor).

Specifically, the Act sets forth in section 15-38-15(B) and (C) a detailed method for apportioning fault "among defendants." Further, and perhaps in recognition of the perceived inequity complained of by Appellants, the General Assembly took steps to protect nonsettling defendants by codifying a nonsettling defendant's right to argue the so-called empty chair defense in subsection (D) and, in subsection (E), the right to offset the value of any settlement received prior to the verdict—a right which arises by operation of law and is not within the discretion of the courts. *See Smith v. Widener,* 397 S.C. 468, 472, 724 S.E.2d 188, 190 (Ct. App. 2012) (holding a nonsettling defendant's right to setoff arises by operation of law, and it is not within the discretion of the trial court to apply setoff). Thus, a critical feature of the statute is the codification of the empty chair defense—a defendant "retain[s] the right to assert another potential tortfeasor, whether a party or not, contributed to the alleged injury or damages"—which necessarily contemplates lawsuits in which an allegedly culpable person or entity is not a party to the litigation (hence the chair in question being "empty").[2]

2. In minimizing the significance of the empty chair defense, which the General Assembly itself deemed substantial enough to warrant codifica-

When the statutory provisions are construed as a whole—the legislature's use of the differing terms "defendants" in subsections (B) and (C) and "potential tortfeasor, whether or not a party" in subsection (D) with the mandatory offset in subsection (E)—the clear intent of the General Assembly is not ambiguous and does not allow for the result sought by Appellants.[3] Rather, were we to accept Appellants' argument, and vary from the provisions of the Act *in this case* to purportedly enhance the prospects of a more equitable result *in this case*, we would create a host of concerns, for Appellant's desired result would require (1) a plaintiff to maintain a suit against someone with whom he has already settled; (2) a settling defendant to defend a lawsuit he has already settled; (3) this Court to ignore the legislature's express acknowledgement in section 15-38-15(D) that not all potential tortfeasors will necessarily be parties to the suit; and

tion, the dissent's allegations of inequity presuppose that the fact-finder will return a verdict for the plaintiff. The dissent ignores that the plaintiff's burden to plead and prove her case remains. Smith must not only prove Appellants' negligence, but also that such negligence was a proximate cause of the accident. A defense verdict remains a viable option, and we reject the suggestion that the empty chair defense is an exercise in futility. In any event, this is the approach sanctioned by the General Assembly in the Act.

3. Although the trial court did not specifically rule upon Appellants' claim that a standalone cause of action for apportionment exists under section 15-38-15(C), based on the considerable litigation surrounding that issue in state and federal courts throughout South Carolina, we take this opportunity, in the interest of judicial economy and for the benefit of the bench and bar, to reject the argument that section 15-38-15(C) creates a standalone cause of action for apportionment of fault to a non-party. Further, because Appellants' brief includes only conclusory references to "due process considerations of fairness and equity" and sets forth no substantive legal argument or supporting citations to authority (even to the due process clauses themselves), we do not consider Appellants' argument that the trial court erred in finding their due process rights were not violated by the inability to join Mizzell or include him on the verdict form for purposes of allocation. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (finding an assertion to be abandoned where appellant failed to provide arguments or supporting authority therefor and explaining mere allegations are insufficient to demonstrate trial court error). Nevertheless, we note " 'unfairness in result is no sure measure of unconstitutionality.' " *Foster v. California*, 394 U.S. 440, 448, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) (quoting *United States v. Augenblick*, 393 U.S. 348, 352, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969)).

(4) would create a conflict with other provisions of the Act, including sections 15-38-15(E) and 15-38-50(1), which address a nonsettling defendant's right to setoff. The most prominent obstacle to Appellants' approach is separation of powers, for we must defer to the will of the legislature as expressed in the Act. If the policy balance struck by the legislature in Act is to be changed, that prerogative lies exclusively within the province of the Legislative Branch.

## III.

While we have not had occasion to address the precise question prior to today, today's result is dictated by the Act. The General Assembly in the Act struck the balance among competing policy concerns it deemed appropriate. We defer to the policy decisions of the General Assembly. For example, in *Riley v. Ford Motor Co.*, we noted that a nonsettling defendant may not "fashion[ ] and ultimately extract[ ] a benefit from the decisions of those who do [settle]." 414 S.C. at 197, 777 S.E.2d at 831 (explaining "[i]f the position of a nonsettling defendant is worsened by the terms of a settlement, this is the consequence of a refusal to settle").

If our mission were simply to achieve equity on a case by case basis, we would not necessarily disagree with Appellants and the dissent. But wherever the balance is struck, one can easily imagine scenarios where the result may be inequitable. The point remains—absent a constitutional prohibition, where the General Assembly has spoken and established policy, separation of powers demands that courts honor the legislative policy determination. Moreover, Appellants' proposed result, advanced by the dissent, would turn the Act on its head to benefit nonsettling defendants at the expense of plaintiffs and those who do settle. That is not the balance the General Assembly struck in the Act. In honoring separation of powers, we adhere to the principle that a court must not reject the legislature's policy determinations merely because the court may prefer what it believes is a more equitable result.

As explained by this Court in *Machin v. Carus Corp.*, 419 S.C. 527, 799 S.E.2d 468, 2017 WL 1489051 (2017), a plain reading of the words "defendant" and "defendants" in section

15-38-15(C) reveals the legislature's intent to allow "only a 'defendant' or 'defendants' to be listed on the jury form and included in the allocation of fault." *Id.* at 545, 799 S.E.2d at 478. In reaching this conclusion, we examined the recent decision of *Walker v. Tensor Machinery Ltd.*, 298 Ga. 297, 779 S.E.2d 651 (2015), in which the Supreme Court of Georgia held that a jury may assess a percentage of fault to an immune nonparty. Critical to the *Walker* analysis was the language in the relevant Georgia statute, which provides "[i]n assessing percentages of fault, the trier of fact shall consider the fault of *all persons or entities* who contributed to the alleged injury or damages, *regardless of whether the person or entity was, or could have been, named as a party to the suit."* Georgia Code Ann. § 51-12-33(c) (emphasis added). In light of this language, as we observed in *Machin*, the result in *Walker* is understandable based on the Georgia statute. However, in stark contrast to the Georgia statute, our legislature determined that fault may be allocated only to "the plaintiff and to the defendants" and requires that "the total of the percentages of fault attributed to the plaintiff and to the defendants must be one hundred percent." S.C. Code Ann. § 15-38-15(C)(3). Thus, guided by the language of the Act and with respect for the legislature's prerogative, this Court held that fault may not be apportioned to an immune nonparty under the Act. *Machin*, 419 S.C. at 545–47, 799 S.E.2d at 478.

## IV.

■■■ And finally, we reject the implication that a rule of civil procedure somehow trumps the Act. Appellants rely on Rules 14 and 19, SCRCP, to support the addition of Mizzell to the underlying litigation and inclusion on the verdict form.

Rule 14 provides "a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to him* for all or part of the plaintiff's claim against him." Rule 14(a), SCRCP (emphasis added). Consequently, a non-party is subject to impleader only if there is a basis to assert he is liable to the named defendant(s) for all or part of the plaintiff's claim. The question becomes: is Mizzell subject to liability to Appellants for all or part of Smith's claim against Appel-

lants? Under these circumstances, the legislature has answered the question in the negative.

The analysis is straightforward. Mizzell is not subject to liability for any part of Smith's claims based on the covenant not to execute he obtained from Smith. The covenant not to execute included language protecting Mizzell from any further liability to Smith in excess of the agreed-upon settlement amount. Even though, by its terms, a covenant not to execute discharges the settling tortfeasor's liability only as to the plaintiff, in section 15-38-50 the legislature expanded the scope of a settling tortfeasor's immunity to include protection from liability to nonsettling tortfeasors. Specifically, section 15-38-50 provides that "[w]hen a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury ... *it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.*" (emphasis added). Thus, by the terms of the covenant not to execute, Mizzell has no additional liability to Smith, and Mizzell is also immune from any liability to non-settling alleged tortfeasors Tiffany, Brown Trucking, and Brown Logistics by virtue of section 15-38-50. Absent any potential liability to either the plaintiff or to nonsettling defendants, impleader under Rule 14 is not proper. *First Gen. Servs. of Charleston, Inc. v. Miller*, 314 S.C. 439, 442, 445 S.E.2d 446, 447 (1994) ("The outcome of the principal claim must impact the third-party defendant's liability; however, no right exists to implead a third-party defendant who is *directly* liable to the plaintiff.").

■■■ Moreover, there is no basis for joinder of Mizzell under Rule 19, SCRCP, which provides in relevant part:

(a) **Persons to Be Joined if Feasible.** A person ... shall be joined as a party in the action if

(1) in his absence *complete relief cannot be accorded among those already parties*, or

(2) he claims an interest relating to the subject of the action....

(emphasis added).[4] It is the italicized language in subsection (a)(1) upon which Appellants rely. Specifically, Appellants

---

4. Notably, the dissent does not offer any discussion of Rule 19 itself or any explanation of how the analysis under Rule 19 has somehow been

contend that by refusing to include Mizzell in the apportionment of fault under section 15-38-15(C), the percentage of fault allocated to and among the nonsettling defendants would be distorted and may result in the unwarranted imposition of joint and several liability. This result, Appellants claim, is contrary to the legislative intent underlying section 15-38-15(A), which abrogated joint and several liability for any defendant whose conduct is determined to be less than fifty percent of the total fault. Thus, Appellants claim Mizzell is a necessary party and must be joined as a party defendant under Rule 19.

Prior to the 2005 revisions to the Act, it was well-established that " '[a]dditional parties are not necessary to a complete determination of [a] controversy unless they have rights which must be ascertained and settled before the rights of the parties to the suit can be determined.' " *Doctor v. Robert Lee, Inc.*, 215 S.C. 332, 335, 55 S.E.2d 68, 69 (1949) (quoting *Phillips v. Clifton Mfg. Co.*, 204 S.C. 496, 502, 30 S.E.2d 146, 148 (1944)). "If the defendant and the parties sought to be brought in were joint tort-feasors, the decisions of this Court are clear to the effect that [the] defendant would have no right to bring in as an additional defendant a joint tortfeasor who was not made a party by the plaintiff." *Simon v. Strock*, 209 S.C. 134, 138, 39 S.E.2d 209, 211 (1946). Accordingly, mere joint tortfeasors are not necessary or indispensable parties to an action under Rule 19, SCRCP.

Throughout the years, this Court has offered various reasons for refusing to allow defendants to bring in alleged joint tortfeasors a plaintiff has opted not to sue. Perhaps most often cited is the "plaintiff chooses" rule: "one who is injured by the wrongful act of two or more joint tort-feasors has an election or option to sue each of such tort-feasors separately or to join them as parties in a single action." *Simon*, 209 S.C. at 138, 39 S.E.2d at 211. "The election or option referred to is given to the plaintiff and not to the defendant." *Id.* at 138, 39 S.E.2d at 211. "To allow a defendant against the will of the plaintiff to bring in other joint tortfeasors as defendants would deny the plaintiff the right to name whom he should sue." *Doctor*, 215

---

altered to now encompass a mere joint tortfeasor as a necessary party to a suit.

S.C. at 335, 55 S.E.2d at 69. The "plaintiff has the choice of designating the party who she claims committed the tort alleged in the complaint." *Simon*, 209 S.C. at 139, 39 S.E.2d at 211. "She should not be required to sue someone against whom she makes no claim." *Id.* Indeed, this right of the plaintiff to choose her defendant has been recognized in South Carolina jurisprudence for almost two hundred years. *Little v. Robert G. Lassiter & Co.*, 156 S.C. 286, 287, 153 S.E. 128, 128 (1930).

Despite the frequency with which courts have cited the plaintiff chooses rule as a basis for refusing improper joinder over the last two centuries, our courts have also offered various other justifications for refusing to join parties whom the plaintiff has opted not to sue, including that the plaintiff's complaint includes no allegations of any liability on the part of the unnamed parties, that the unnamed parties do not claim any interest in the controversy, and that the defendant may be found liable to the plaintiff regardless of whether the unnamed joint tortfeasors are made parties. *Robbins v. First Fed. Sav. Bank*, 294 S.C. 219, 223, 363 S.E.2d 418, 421 (Ct. App. 1987); *see also Simon*, 209 S.C. at 139–40, 39 S.E.2d at 211. We have also held that parties who are not subject to liability by virtue of settlement or statutory immunity are not properly added as party defendants. *Chester*, 388 S.C. at 346, 698 S.E.2d at 560 (noting the "strong public policy favoring the settlement of disputes"); *Simon*, 209 S.C. at 140, 39 S.E.2d at 211. We have also found joinder is not necessary where the named defendant will not be subject to multiple or inconsistent obligations and the rights of the non-party will not be impaired if he is not joined as a party defendant. *Robbins*, 294 S.C. at 223, 363 S.E.2d at 421.

Notably, our courts have also observed a number of times that joinder of an unnamed potential tortfeasor is unnecessary based on common law principles of joint and several liability—namely, that an unnamed joint tortfeasor is not a necessary party to the suit "[s]ince a joint tort-feasor is severally liable for the entire damage." *S.C. Dep't of Health & Envtl. Control v. Fed-Serv Indus., Inc.*, 294 S.C. 33, 362 S.E.2d 311 (Ct. App. 1987) (explaining "the joint tort-feasor with joint and several liability remains merely a permissive party").

It is this particular justification that Appellants claim was eviscerated by the 2005 amendments to the Act. Although this argument was not specifically raised to or ruled upon by the trial court, Appellants now argue that because pure joint and several liability is no longer recognized in all instances, the absence of Mizzell as a party defendant precludes their ability to receive a fair trial and renders the court unable to "accord complete relief" among those already parties. Thus, Appellants contend Mizzell is a necessary party and must be joined under Rule 19.

To accept this argument would be inconsistent with this Court's decision in *Chester v. South Carolina Department of Public Safety*, in which we unanimously reaffirmed—*after* the 2005 amendments to the Act—the well-established right of the plaintiff to choose "which co-tortfeasor(s) she will sue." 388 S.C. at 346, 698 S.E.2d at 560. In reaffirming the plaintiff chooses rule in *Chester*, we explained, "[w]e are not persuaded that the General Assembly, in enacting § 15-78-100(c) ... intended to abrogate the tort plaintiff's right to choose her defendant." *Id.* Indeed, "statutes in derogation of the common law are to be strictly construed," and therefore this Court found it was constrained to construe the scope of the newly enacted statute entitling a Tort Claims Act defendant to a proportionate verdict as not restricting common law principles beyond the clear intent of the legislature. *Id.*; *see also Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 536, 725 S.E.2d 693, 696 (2012) (observing "a statute restricting the common law will 'not be extended beyond the clear intent of the legislature'" (quoting *Crosby v. Glasscock Trucking Co.*, 340 S.C. 626, 628, 532 S.E.2d 856, 857 (2000)). This Court is similarly constrained to strictly construe the scope of the 2005 amendments to the Act insofar as they alter the common law. We find nothing in the text of the Act that evinces a clear legislative intent to abrogate two centuries of common law establishing a plaintiff's right to choose which tortfeasors, if any, she will sue. We additionally note the legislature did not overrule or otherwise respond to *Chester* by amending either the Act or the Tort Claims Act. We conclude that absent explicit and unmistakable legislative intent to abrogate this well-established right, a joint tortfeasor remains merely a permissive party and joinder

under Rule 19 is not required for complete relief to be accorded.

## V.

In sum, based on the unambiguous language in the Act, we affirm the trial court's dismissal of Appellants' third party complaint. Our decision is the result of determining and honoring legislative intent. We respectfully reject Appellants' invitation to adopt a result that comports with their sense of equity. We construe the statute in a manner to give effect to the policy decision made by the legislature. Is the policy decision advanced by Appellants, and adopted by the dissent, equitable and defensible? Absolutely. Could the legislature have drafted the statute to achieve the result desired by Appellants? Absolutely. But the policy decision belongs to the legislature, and the legislature has crafted the provisions of the Act as it sees fit. We are a court, not a legislative body. That a court may disagree with a legislative body's policy decisions or believe a perceived "more fair" outcome exists is of no moment.

**AFFIRMED.**

BEATTY, C.J., FEW, J., and Acting Justice James E. Moore, concur. Acting Justice Costa M. Pleicones, dissenting in a separate opinion.

## ACTING JUSTICE PLEICONES:

I respectfully dissent. As discussed *infra*, I disagree with the majority's suppositions regarding the policy underlying the South Carolina Contribution Among Tortfeasors Act ("the Act").[5] In my opinion, in an action filed pursuant to the Act, a defendant may join an allegedly culpable non-party under Rule 19, SCRCP, where the non-party is otherwise immune from contribution. Accordingly, I would reverse the trial judge's grant of summary judgment.

### HISTORY OF THE ACT

Prior to the Act, the longstanding general rule was that no right of contribution between joint tortfeasors existed, as

---

5. *See* S.C. Code Ann. §§ 15-38-10 to -70 (2005 & Supp. 2015).

courts "are not open to wrongdoers to assist them in adjusting the burdens of their misconduct, and that the law will not lend its aid to one who founds his cause of action on a delict." *See Atlantic Coast Line Railroad Company v. Whetstone*, 243 S.C. 61, 69, 132 S.E.2d 172, 175 (1963) (citing *Merryweather v. Nixon*, [1799] 8 T.R. 186, 101 (Eng. Rep. 1337)); *M & T Chemicals, Inc. v. Barker Indus., Inc.*, 296 S.C. 103, 106, 370 S.E.2d 886, 888 (Ct. App. 1988) ("[T]he nonexistence of the right to contribution among joint tortfeasors is a matter long thought to have been settled as the law of this state" (citation omitted)). Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *United States v. Atl. Research Corp.*, 551 U.S. 128, 138, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007) (citing *Black's Law Dictionary* 353 (8th ed. 2004)); S.C. Jur. Contribution § 5 (2015).

However, in 1988, the General Assembly enacted the Act, which abrogated the common law rule against contribution. Specifically, the Act granted joint tortfeasors the right to seek contribution if they paid more than their pro rata share of a common liability. *See* 1988 S.C. Acts No. 432, § 5.

Shortly after its enactment, this Court found the purpose of the Act was to ameliorate the unfairness resulting from the common law bar to contribution. *Southeastern Freight Lines v. City of Hartsville*, 313 S.C. 466, 470, 443 S.E.2d 395, 397 (1994), *superseded by statute on other grounds as stated in Capco of Summerville, Inc. v. J.H. Gayle Const. Co.*, 368 S.C. 137, 628 S.E.2d 38 (2006) (citing S.C. Code Ann. § 15-38-20(B) (Supp. 1993)); *cf.* 7 S.C. Jur. *Contribution* § 4 (2016) ("In the United States the great majority of jurisdictions have recognized that the rule denying contribution among joint tortfeasors was not well founded and, therefore, have abrogated the common law doctrine."). As noted by the Supreme Court of the United States, "when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation, and it is sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability." *Northwest Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 87–88, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (footnotes omitted). Thus, while South Carolina retained

the concept of pure joint and several liability, which allowed the plaintiff to collect damages from any or all of the joint tortfeasors, after 1988, the Act permitted the defendant(s) sued by the plaintiff to collect contribution from other named and unnamed tortfeasors. *See* § 15-38-40 (2005).

In 1991, the Court, like the General Assembly, took action to modernize South Carolina's tort law, joining the vast majority of its sister jurisdictions [6] in adopting comparative negligence. Prior to 1991, under the law of contributory negligence, if the negligence of the plaintiff contributed in the slightest degree to the plaintiff's injury and damage, then she was not entitled to recover. *McMaster v. S. Ry. Co.*, 122 S.C. 375, 115 S.E. 631, 632 (1923). Comparative negligence, in contrast, allows a plaintiff to recover damages not attributable to her own fault notwithstanding the plaintiff's contribution to the injury. *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 86, 508 S.E.2d 565, 573 (1998). The Court found comparative negligence more fair than the archaic rule of contributory negligence, allowing the common law to further evolve in favor of equitable tort doctrines. *See Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991).

Although this Court adopted the doctrine of comparative negligence, the plaintiff remained able to choose her defendant(s) from any of the allegedly culpable parties, as the doctrine of pure joint and several liability was unchanged. This Court has defined pure joint and several liability as follows:

> If two or more persons owe to another the same duty, and by their common neglect of that duty, he is injured, doubtless, the tort is joint, and upon well-settled principles each, any, or all of the tort[ ]feasors may be held. But when each of two or more persons owe to another a separate duty, which each wrongfully neglects to perform, then, although the duties were diverse and disconnected, and the neglect of each was without concert, if such several neglects occurred and united together in causing injury, the tort is equally joint, and the tort[ ]feasors are subject to a like liability.

6. By 1984, South Carolina was one of only seven states that still recognized the doctrine of contributory negligence as applicable to negligence actions generally. *Langley v. Boyter*, 284 S.C. 162, 172, 325 S.E.2d 550, 556 (Ct. App. 1984), *opinion quashed by* 286 S.C. 85, 332 S.E.2d 100 (1985).

*Matthews v. Seaboard Air Line Railway,* 67 S.C. 499, 46 S.E. 335 (1903) (citations omitted).

In more simplistic terms, pure joint and several liability allows a plaintiff to decide from which defendant she would like to seek payment of her damages, which is the foundation of the "plaintiff chooses" rule discussed *infra.* In summary, after 1991: a plaintiff was not barred from recovery by her own negligence; the plaintiff could choose from which defendant to seek payment of her damages; and, in general, a defendant who was successfully sued by a plaintiff could, in turn, seek contribution from a non-party joint tortfeasor.

In 2005, the General Assembly fundamentally altered the concept of joint and several liability when it amended the Act and made allocation of fault central to the determination of an individual defendant's liability to a plaintiff. *See* 2005 S.C. Act Nos. 27, § 6; 32, § 16. Broadly, the 2005 amendment statutorily abrogated pure joint and several liability for tortfeasors who are less than 50% at fault. *See* § 15-38-15; *see also Branham v. Ford Motor Co.,* 390 S.C. 203, 235–36, 701 S.E.2d 5, 22 (2010).

Specifically, the 2005 amendments require that in an action to recover damages resulting from, *inter alia,* personal injury or damage to property, the fact-finder must apportion 100% of fault between the plaintiff, and "each defendant whose actions are the proximate cause of the indivisible injury...." *See* § 15-38-15. The Act first requires the fact-finder determine the amount of recoverable damages. *See* § 15-38-15(C)(1). The fact-finder must then determine the percentage of fault, if any, of the plaintiff. *See* § 15-38-15(C)(2).[7] Finally, the Act requires that where the verdict is against two or more defendants for the same indivisible injury, upon a post-verdict motion by a defendant, the fact-finder is *required to apportion 100% of the fault* between the plaintiff and the defendants. *See* § 15-38-

---

7. Sections 15-38-15(B)–(C)(2) (Supp. 2015), stating:

(B) Apportionment of percentages of fault among defendants is to be determined as specified in subsection (C).

(C) The jury, or the court if there is no jury, shall:

(1) specify the amount of damages;

(2) determine the percentage of fault, if any, of plaintiff and the amount of recoverable damages under applicable rules concerning "comparative negligence[.]

15(C)(3).[8] Further, and in my opinion critical to the analysis, the Act requires that if a defendant is less than fifty percent at fault, *he is only liable to the plaintiff for the percentage of the damage he individually caused*; however, *if the defendant is fifty percent or more at fault, he is jointly and severally liable for the total damage to the plaintiff.* See § 15-38-15(A).[9]

---

8.  Sections 15-38-15(C)(3)–(E) (Supp. 2015), stating:

    (3) upon a motion by at least one defendant, where there is a verdict under items (1) and (2) above for damages against two or more defendants for the same indivisible injury, death, or damage to property, specify in a separate verdict under the procedures described at subitem (b) below the percentage of liability that proximately caused the indivisible injury, death, damage to property, or economic loss from tortious conduct, as determined by item (1) above, that is attributable to each defendant whose actions are a proximate cause of the indivisible injury, death, or damage to property. In determining the percentage attributable to each defendant, any fault of the plaintiff, as determined by item (2) above, will be included so that the total of the percentages of fault attributed to the plaintiff and to the defendants must be one hundred percent. In calculating the percentage of fault attributable to each defendant, inclusion of any percentage of fault of the plaintiff (as determined in item (2) above) shall not reduce the amount of plaintiff's recoverable damages (as determined under item (2) above).

    (a) For this purpose, the court may determine that two or more persons are to be treated as a single party. Such treatment must be used where two or more defendants acted in concert or where, by reason of agency, employment, or other legal relationship, a defendant is vicariously responsible for the conduct of another defendant.

    (b) After the initial verdict awarding damages is entered and before the special verdict on percentages of liability is rendered, the parties shall be allowed oral argument, with the length of such argument subject to the discretion of the trial judge, on the determination of the percentage attributable to each defendant. However, no additional evidence shall be allowed.

    (D) A defendant shall retain the right to assert that another potential tortfeasor, whether or not a party, contributed to the alleged injury or damages and/or may be liable for any or all of the damages alleged by any other party.

    (E) Notwithstanding the application of this section, setoff from any settlement received from any potential tortfeasor prior to the verdict shall be applied in proportion to each defendant's percentage of liability as determined pursuant to subsection (C).

9.  *See* § 15-38-15(A) (Supp. 2015):

    In an action to recover damages resulting from personal injury, wrongful death, or damage to property or to recover damages for economic loss or for noneconomic loss such as mental distress, loss of enjoyment, pain, suffering, loss of reputation, or loss of compan-

Thus, the 2005 amendments to the Act abrogate pure joint and several liability for less culpable tortfeasors, and require 100% apportionment of fault to determine whether a defendant is subjected to joint and several liability.

In abrogating the common law doctrine of pure joint and several liability, as well as the bar to contribution among joint tortfeasors, the General Assembly has established that the public policy of South Carolina favors fair apportionment of liability among joint tortfeasors where the common law did not. The General Assembly and the Court have taken steps to modernize tort law—first by removing the bar to contribution, then by adopting comparative negligence, and finally by abrogating pure joint and several liability—requiring that the Court continue to examine our common law rules in light of these changes. As explained below, in my opinion, this evolution requires that the common law "plaintiff chooses" rule yield to the public policies expressed by the General Assembly in the Act.

## INCOMPATIBILITY WITH THE PLAINTIFF CHOOSES RULE

In granting Mizzell's motion for summary judgment, the trial judge ruled Brown Trucking's attempt to join Mizzell to the lawsuit was impermissible, as it was an "attempted end-run" around the common law "plaintiff chooses" rule. Having examined the legislative public policies behind the Act, in my opinion, in order to permit the fact-finder in a tort action subject to the Act to apportion fault as required as well as accurately and fairly, the common law "plaintiff chooses" rule must yield.

---

ionship resulting from tortious conduct, if indivisible damages are determined to be proximately caused by more than one defendant, joint and several liability does not apply to any defendant whose conduct is determined to be less than fifty percent of the total fault for the indivisible damages as compared with the total of: (i) the fault of all the defendants; and (ii) the fault (comparative negligence), if any, of plaintiff. A defendant whose conduct is determined to be less than fifty percent of the total fault shall only be liable for that percentage of the indivisible damages determined by the jury or trier of fact.

The General Assembly made a policy decision when it amended the Act in 2005, statutorily abrogating the doctrine of pure joint and several liability for defendants who the fact-finder deems are less than 50% at fault. The common law "plaintiff chooses" rule stands as an obstacle to that policy decision where the plaintiff fails to name as a defendant an allegedly culpable joint tortfeasor who is immune from contribution. *See* § 15-38-15(A); § 15-38-50. In my view, if the "plaintiff chooses" rule is permitted to stand, it would thwart the public policy of the Act. *See Hampton v. Haley*, 403 S.C. 395, 403, 743 S.E.2d 258, 263 (2013) (holding included within the legislative power is the sole prerogative to make policy decisions).

As noted by the majority, in requiring apportionment under the Act, the General Assembly utilized the term "defendants," as opposed to "joint tortfeasors." In my opinion, permitting a named defendant to join as a third-party defendant an alleged joint tortfeasor who is immune from contribution gives effect to the intent of the General Assembly, satisfying the literal language of the Act. However, in a matter involving joint tortfeasors who are subject to contribution, in my opinion, the "plaintiff chooses" rule remains compatible with the purpose of the Act, as a defendant burdened with more than its fair share of liability may seek relief under § 15-38-40.[10] *See* § 15-38-40(B).

Specifically, after the conclusion of a lawsuit under the Act, § 15-38-40 allows a defendant to seek contribution against other "judgment" defendants or tortfeasors not named to the lawsuit. However, where an allegedly culpable tortfeasor(s) is

---

10. My position is not one of statutory interpretation; instead, I merely find that the "plaintiff chooses" rule may not stand as an obstacle to the clear legislative intent, which requires an accurate and fair apportionment of the fault so that a less culpable tortfeasor is not held responsible for more than its fair share. In order to effectuate that mandate, joinder allows a named defendant to ensure all other potential tortfeasors are "defendants," as required by statute for the purpose of allocation. Allowing the most culpable parties to be impleaded for the purpose of apportionment in no way results in inequity to the plaintiff or the named defendants—quite the opposite, it ensures neither the plaintiff nor the originally named defendants will be burdened with an artificial allocation of fault. I simply discuss the legislative history to support what I find to be the clear intent of the language of the Act: to fairly and rationally apportion 100% of the fault.

immune from contribution and not named as a defendant by the plaintiff, the sole ability a named defendant has to be held liable *for only their fair share of damages*, is to join the missing party to the initial lawsuit filed under the Act. Such are the circumstances in the case before us.

In my opinion, the "plaintiff chooses" rule cannot be invoked to impede the purpose of the Act. I therefore would reverse the trial judge's ruling that refused to allow Brown Trucking to join Mizzell as a defendant under Rule 19, SCRCP, on the ground that such an order would violate the "plaintiff chooses" rule.[11]

## APPLICATION

The narrow legal question before this Court is whether, under Rule 19, SCRCP, a defendant may join an allegedly culpable non-party who is immune from contribution in order to achieve a fair apportionment of damages under the Act.[12]

Here, the plaintiff chose to sue only alleged tortfeasors— Brown Trucking Company, Brown Logistics, and Tiffany— who were not physically involved in the accident giving rise to the plaintiff's injuries. In exchange for a covenant not to execute, the plaintiff settled with the automobile insurer of a joint tortfeasor whose fault allegedly caused the accident— Mizzell. Any recovery in the plaintiff's lawsuit would be the burden of appellants alone as Mizzell's settlement agreement renders him immune from contribution.

As demonstrated by the facts of this case, precluding a defendant from joining as an additional defendant an allegedly

---

11. I would overrule *Chester v. South Carolina Dep't of Pub. Safety*, 388 S.C. 343, 698 S.E.2d 559 (2010), as well as its progeny, to the extent they suggest the "plaintiff chooses" rule survives the 2005 amendments to the Act in all circumstances.

12. As noted by the trial judge, the Act "has received little attention from our state's appellate courts"; however, the issues created by the language of the apportionment statute have been a repeated topic of discussion in the scholarly journals of this state. *See, e.g.*, Amity S. Edmonds, *Tort Liability in South Carolina: Does Section 15-38-15 Truly Limit Joint and Several Liability or is it a Mere Illusion in the Realm of Phantom Tortfeasors?*, 5 CHARLESTON L. REV. 679 (2011); Joshua D. Shaw, *Limited Joint and Several Liability Under Section 15-38-15: Application of the Rule and the Special Problem Posed by Nonparty Fault*, 58 S.C. L. REV. 627 (2007).

culpable third-party who is immune from contribution would deny the fact-finder the ability to accurately and fairly apportion fault. The trial judge and majority find unfairness to be ameliorated by the "empty chair" provision found in Section 15-38-15(D) of the Act.[13] The facts of this case demonstrate why that procedural provision does not remedy this problem. Where a tortfeasor(s) not named by the plaintiff is immune from contribution—it serves no purpose to allow a defendant to argue liability lies with that tortfeasor(s) where the fact-finder is required to apportion 100% of liability only between the parties before it. *See* S.C. Code Ann. §§ 15-38-15(D) (Supp. 2015); 15-38-40.

The implications under the facts of this case are far reaching. First, Mizzell's absence subjects the plaintiff and appellants to an irrational allocation of fault. Specifically, the allocation of 100% fault amongst the parties, absent Mizzell, would result in an apportionment not based on actual fault, but rather, solely based on the forced artificial calculation of 100% apportionment without the seemingly most culpable party. Second, the allocation of fault could unfairly expose Brown Trucking Company, Brown Integrated Logistics, and Tiffany, to joint and several liability. Third, Mizzell is statutorily immune from contribution due to the covenant not to execute, meaning the named defendants are without financial recourse from the alleged tortfeasor responsible for the plaintiff's injuries. *See* § 15-38-50(2) ("When a release or a covenant not to sue or not to enforce judgment is given in good faith to one or two or more persons liable in tort for the same injury or the same wrongful death: it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.").

To illustrate further, if the fact-finder allocated fault at 33.3% to each named defendant [14]—Brown Trucking Company,

---

13. Section 15-38-15(D) states, "A defendant shall retain the right to assert that another potential tortfeasor, whether or not a party, contributed to the alleged injury or damages and/or may be liable for any or all of the damages alleged by any other party." S.C. Code Ann. § 15-38-15(D) (Supp. 2015).

14. I recognize that pursuant to S.C. Code Ann. § 15-38-15(C)(3)(a), were the allegations contained within Smith's complaint based solely in

Brown Logistics, and Tiffany—no appellant would face joint and several liability. However, if Tiffany were removed, and the ratios remained the same, the percentage of fault allocated to each Brown Trucking Company and Brown Logistics would rise to 50%, and each would be subjected to joint and several liability. *See* § 15-38-15(A). Even if the fact-finder were to find Smith and the named defendants each 50% at fault, this allocation would distort reality because a seemingly major contributor to the accident is not factored into the liability determination. Stated differently, Mizzell's absence from this lawsuit deprives the fact-finder of the ability to allocate fault rationally, and subjects appellants, as well as the plaintiff, to a flawed allocation of fault, which in turn could cause unfair exposure to joint and several liability with no recourse to seek contribution.

As the facts of this case demonstrate, not allowing Brown Trucking to join Mizzell as a defendant puts the fact-finder in a position of having to allocate a disproportionate amount of fault to either the plaintiff, or appellants (who were not physically involved in the accident). I find such a result contrary to the policy expressed by the General Assembly in the 2005 amendments to the Act, which seeks to protect less culpable defendants from being burdened with more than their fair share of liability.

Accordingly, in order to give effect to the public policy decisions of the General Assembly, I would hold a defendant may join other potential joint tortfeasors who are immune from contribution under Rule 19, SCRCP.

---

vicarious liability, a trial court would be required to treat appellants as one party; however, in this case, Smith alleges Brown Trucking engaged in negligent entrustment of the tractor-trailer to Tiffany, as well as negligent hiring, supervising, and retention of Tiffany, rendering § 15-38-15(C)(3)(a) potentially inapplicable.