# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Shannon P. Green and Darrell Russell, Plaintiffs,

v.

Edward C. McGee and David Hudgins, Defendants,

of whom Shannon P. Green is the Respondent,

and

David Hudgins is the Petitioner.

Appellate Case No. 2023-001735

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Spartanburg County
Grace Gilchrist Knie, Circuit Court Judge

---

Opinion No. 28295
Heard May 13, 2025 – Filed August 13, 2025

---

## REVERSED AND REMANDED

---

Curtis Lyman Ott and Jessica Waller Laffitte, both of Columbia, and Ioannis (Ian) George Conits, of Greenville, all of Gallivan, White & Boyd, PA, for Petitioner.

Douglas A. Churdar, of Upstate Lawyer, of Greenville, for Respondent Shannon P. Green.

Michael T. Coulter and Michelle N. Endemann, both of Clarkson, Walsh & Coulter, P.A., of Greenville, for Respondents Edward C. McGee and Progressive Direct Insurance Company.

_____

**JUSTICE JAMES:**  The issue in this motor vehicle accident case is whether the court of appeals correctly applied the provisions of the Uniform Contribution Among Tortfeasors Act (S.C. Code Ann. §§ 15-38-10 to -70 (2005 and Supp. 2024)) (the "Contribution Act") to arrive at appropriate net judgments to be entered in favor of plaintiff Shannon P. Green against the two defendant drivers, Edward C. McGee and David Hudgins.  We reverse the court of appeals' setoff calculation and hold a proper calculation leaves Green with a net judgment against McGee in the amount of $23,546.78 and a net judgment against Hudgins in the amount of $35,000.  We remand for entry of judgment in those amounts.

## I.

Hudgins and McGee were driving separate vehicles when they became involved in a mutual road-rage incident that concluded with McGee crashing into Green's vehicle.  Green was injured, and she and her husband, Darrell Russell, sued both McGee and Hudgins.  Prior to commencing the action, Green and Russell received the policy limits of $100,000 from McGee's liability carrier, Nationwide Affinity Insurance Company of America, in exchange for a covenant not to execute (also referred to in this opinion as a covenant not to enforce judgment).  Green served the summons and complaint on her UIM carrier, Progressive Direct Insurance Company.  As permitted by statute, Progressive defended the suit in the name of McGee.  *See* S.C. Code Ann. § 38-77-160 (2015) ("The [underinsured motorist carrier] has the right to appear and defend in the name of the underinsured motorist in any action which may affect its liability . . . .").

The jury determined McGee was 60% at fault and Hudgins was 40% at fault and, of great importance in this case, found both acted recklessly, willfully, and wantonly.  The jury returned an actual damages verdict for Green of $88,546.78, a punitive damages verdict against McGee of $35,000, and a punitive damages verdict against Hudgins of $35,000.  Hudgins moved for setoff of the $100,000 paid by Nationwide on behalf of McGee.  Citing South Carolina Code section 15-38-50

(2005), the trial court added the actual damages award and both punitive damages awards for a total verdict of $158,546.78. The trial court then subtracted the $100,000 Nationwide payment from the total verdict and ordered responsibility for the remaining $58,546.78 be shared by McGee and Hudgins on a pro-rata basis according to the fault assigned by the jury—60% for McGee ($35,128.07) and 40% for Hudgins ($23,418.71). The effect of the trial court's ruling gave Green net judgments totaling $58,546.78.

Hudgins appealed the setoff ruling, and the court of appeals held the trial court erred in its calculation. *Green v. McGee*, 441 S.C. 157, 892 S.E.2d 520 (Ct. App. 2023). The court of appeals allocated 60% of the actual damages to McGee ($53,128.07) and 40% to Hudgins ($35,418.71). *Id.* at 171, 892 S.E.2d at 527. The court of appeals then added McGee's 60% allocation to McGee's $35,000 punitive damages verdict, for a total of $88,128.07. *Id.* The court of appeals applied Nationwide's $100,000 payment to that sum and applied the $11,871.93 difference to Hudgins' $35,418.71 share of the actual damages award, reducing it to $23,546.78. *Id.* The court of appeals added Hudgins' $35,000 punitive damages verdict to that sum for a net judgment of $58,546.78 against Hudgins and a net judgment of $0 against McGee. *Id.* We granted Hudgins' petition for a writ of certiorari to review the court of appeals' setoff calculation.

## II.

Subsection 15-38-15(A) of the Contribution Act provides for apportionment of liability among joint tortfeasors arising from tortious conduct:

> In an action to recover damages resulting from personal injury, wrongful death, or damage to property or to recover damages for economic loss or for noneconomic loss such as mental distress, loss of enjoyment, pain, suffering, loss of reputation, or loss of companionship resulting from tortious conduct, if indivisible damages are determined to be proximately caused by more than one defendant, joint and several liability does not apply to any defendant whose conduct is determined to be less than fifty percent of the total fault for the indivisible damages as compared with the total of: (i) the fault of all the defendants; and (ii) the fault (comparative negligence), if any, of plaintiff. A defendant whose conduct is determined to be less than fifty percent of the total fault shall only be liable for that percentage of the indivisible damages determined by the jury or trier of fact.

S.C. Code Ann. § 15-38-15(A) (Supp. 2024); *see also Smith v. Tiffany*, 419 S.C. 548, 552-53, 799 S.E.2d 479, 481 (2017) (explaining that in subsection 15-38-15(A), "the legislature abrogated pure joint and several liability for tortfeasors who are less than fifty percent at fault").  Subsection 15-38-15(E) connects allocation of fault to setoff and provides, "[n]otwithstanding the application of this section, setoff from any settlement received from any potential tortfeasor prior to the verdict shall be applied in proportion to each defendant's percentage of liability as determined pursuant to subsection (C)."  S.C. Code Ann. § 15-38-15(E) (Supp. 2024).  However, of particular significance in this case, subsection 15-38-15(F) provides "[t]his section does not apply to a defendant whose conduct is determined to be wilful, wanton, reckless, grossly negligent, or intentional . . . ."  S.C. Code Ann. § 15-38-15(F) (Supp. 2024).

In their respective calculations of the net judgments against McGee and Hudgins, both the trial court and the court of appeals took into account the jury's finding that McGee was 60% at fault and Hudgins was 40% at fault.  This was error.  As Green has consistently argued, subsection 15-38-15(F) of the Contribution Act prohibits the application of a 60/40 allocation of fault between McGee and Hudgins because the jury found both acted recklessly, willfully, and wantonly.  Thus, McGee and Hudgins are jointly and severally liable for the actual damages award of $88,546.78.  Hudgins contends this issue is not preserved for review because Green did not appeal the trial court's calculations.  However, Green had no reason to do so, because the end result gave her the relief she seeks—a net judgment totaling $58,546.78, representing the balance of her $158,546.78 combined verdicts after deducting the $100,000 payment she received from Nationwide.  For the same reason, Green had no reason to seek relief from the court of appeals' erroneous method of calculation.  Green continues to argue the jury's fault percentages should not be a factor in the calculations, and we hold the issue is properly before us.

## III.

Applying section 15-38-50 of the Contribution Act, we now calculate the net judgment against Hudgins.  Section 15-38-50 provides:

> When a release or *a covenant* not to sue or *not to enforce judgment* is given in good faith to one of two or more persons liable in tort for *the same injury* or the same wrongful death:
>
> > (1) it does not discharge any of the *other tortfeasors* from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the

others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

S.C. Code Ann. § 15-38-50 (2005) (emphasis added). There is no dispute the covenant was given to McGee in good faith by Green. With respect to the actual damages sustained by Green, the covenant was given for "the same injury" for which Green ultimately received the $88,546.78 actual damages award against McGee and Hudgins. Therefore, Hudgins is entitled to a setoff of $100,000 against the actual damages award of $88,546.78.

Hudgins first contends the net judgment against him should be $0. He bases that contention on the 40% allocation of fault assigned by the jury. For the reasons noted above, the percentage allocation is of no import because the jury found Hudgins to be reckless, willful, and wanton. Therefore, we need not consider the specifics of the calculations Hudgins relies upon to arrive at a net judgment of $0.

Hudgins alternatively claims that, at most, the net judgment against him should be $23,546.78. He arrives at that figure by adding the actual damages verdict of $88,546.78 to the $35,000 punitive verdict against him. He then deducts the $100,000 Nationwide payment from the total verdict against him of $123,546.78. This approach does not comport with subsection 15-38-50(1) of the Contribution Act, which provides that when a covenant not to enforce judgment is given in good faith to a tortfeasor liable for "the same injury," the payment reduces the claim against other tortfeasors. Hudgins contends he and McGee were liable in tort for "the same injury" sustained by Green. We agree, but only as to the actual damages sustained by Green. The punitive awards against McGee and Hudgins were not for "the same injury." In *Laird v. Nationwide Insurance Company*, we noted the distinction between actual damages and punitive damages:

In *Shuler v. Heitley*, 209 S.C. 198, 39 S.E.2d 360 [1946], it was held that exemplary or punitive damages are not given with a view to compensation but are under certain circumstances awarded, in addition to compensation as a punishment to the defendant and as a warning to other wrongdoers.

243 S.C. 388, 396, 134 S.E.2d 206, 210 (1964). We need not cite numerous cases for the obvious: actual damages are awarded by a jury in a personal injury case to

compensate a plaintiff for losses such as reasonably incurred medical expenses, future medical expenses, pain and suffering, loss of enjoyment of life, permanent impairment, disfigurement, lost wages, lost earning capacity, etc. Actual damages are, as the trial court instructed the jury, intended to put the plaintiff in, as near as possible, the same position she was in before the accident. In this case, and in just about every personal injury case with multiple defendants, an award of actual damages compensates a plaintiff for "the same injury."

Punitive damages are a different animal. They are awarded with an eye toward the reckless defendant's specific conduct. *See, e.g.*, *Harleysville Grp. Ins. v. Heritage Cmtys., Inc.*, 420 S.C. 321, 353, 803 S.E.2d 288, 306 (2017) (explaining the goal of actual damages is to restore the injured party to the same position he or she was in before the wrongful injury occurred, while punitive damages relate not to the plaintiff, but rather to the defendant's reckless, willful, wanton, or malicious conduct). In addition to serving as punishment to the wrongdoer and to deter the wrongdoer and others from engaging in similar reckless conduct, "[p]unitive damages also serve to vindicate a private right of the injured party by requiring the wrongdoer to pay money to the injured party." *Clark v. Cantrell*, 339 S.C. 369, 378-79, 529 S.E.2d 528, 533 (2000).

A centerpiece of our case law regarding punitive damages is the requirement that a reviewing court evaluate the reprehensibility of the reckless defendant's conduct. In *Mitchell, Jr. v. Fortis Insurance Company*, we reviewed a jury award of punitive damages and noted,

> First, any court reviewing a punitive damages award should consider the degree of reprehensibility of the defendant's conduct. Reprehensibility is "perhaps the most important indicium of the reasonableness of a punitive damages award." *BMW of North America v. Gore*, 517 U.S. 559, 565 (1996). "This principle reflects the view that some wrongs are more blameworthy than others." *Id.* In considering reprehensibility, a court should consider whether: (i) the harm caused was physical as opposed to economic; (ii) the tortious conduct evinced an indifference to or a reckless disregard for the health or safety of others; (iii) the target of the conduct had financial vulnerability; (iv) the conduct involved repeated actions or was an isolated incident; and (v) the harm was the result of intentional malice, trickery, or deceit, rather than mere accident. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

385 S.C. 570, 587, 686 S.E.2d 176, 185 (2009) (citation modified).

Trial courts uniformly instruct juries they must consider the reprehensibility of the defendant's conduct when deciding the punitive damages issue. Here, referring to a potential punitive damages award as a "penalty," the trial court charged the jury the following:

> Any penalty imposed should take into account the reprehensibility of the conduct[,] the harm caused, the Defendant's awareness of the conduct's wrongfulness, the duration of the conduct, and any concealment. Thus, any penalty imposed should bear a relationship to the nature and extent of the conduct and the harm caused including the compensatory damage award made by you.

This instruction, and the principles referenced in *Mitchell* and *Harleysville*, clearly establish that punitive damages awards are tied to a defendant's specific, individual conduct. Therefore, the separate punitive damages awards against McGee and Hudgins were not imposed for "the same injury." Subsection 15-38-50(1) does not apply when separate punitive damages awards are imposed against multiple defendants. Hudgins is entitled to set off the $100,000 Nationwide payment against the $88,546.78 joint actual damages award; however, he is not entitled to set off the remaining $11,453.22 against the $35,000 punitive damages verdict against him. Therefore, Green has a net judgment against Hudgins of $35,000.

## IV.

Finally, we address Progressive's obligation as Green's UIM carrier. A UIM carrier receives a credit against its contractual obligation to pay UIM coverage when an at-fault insured's liability insurer pays money to the UIM carrier's insured in exchange for a covenant not to enforce judgment. Here, Green received $100,000 from Nationwide, McGee's liability carrier, in exchange for such a covenant. Progressive, as Green's UIM carrier, owes coverage to Green "in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist . . . ." S.C. Code Ann. § 38-77-160. Therefore, Progressive is liable to Green—to the extent of the UIM limits it afforded to Green—for the amount of the actual and punitive damages attributed to McGee in excess of Nationwide's liability limits of $100,000. *See Broome v. Watts*, 319 S.C. 337, 341-42, 461 S.E.2d 46, 48-49 (1995) (calculating a credit for a UIM carrier following plaintiff's prior settlement with at-fault motorist's liability insurer). Simple math takes over at this point. Progressive is entitled to a credit of $100,000 towards the entire verdict against McGee of $123,546.78 ($88,546.78 actual damages + $35,000

punitive damages).  Therefore, Progressive is obligated to Green in the amount of $23,546.78 or in the amount of the UIM limits afforded to Green, whichever is less.[1]

**V.**

For the foregoing reasons, we reverse the court of appeals' setoff and UIM credit calculations and remand to the trial court for entry of judgment consistent with this opinion.[2]

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., FEW, HILL, JJ., and Acting Justice Jocelyn Newman, concur.**

---

[1] Progressive's status as UIM carrier for Green is different from Hudgins' status as a judgment debtor to Green.  When Nationwide paid its limits and secured the covenant for McGee, Progressive—as Green's UIM carrier—defended the suit in McGee's name.  Progressive is not, as to McGee, an "other tortfeasor" under section 15-38-50.  Therefore, with respect to Green's judgment against McGee, the $100,000 Nationwide payment is not to be applied as a section 15-38-50 setoff in favor of Progressive against the McGee judgment; rather, the Nationwide payment is in the form of a credit in favor of Progressive pursuant to the language of the covenant, *Broome v. Watts*, and the Progressive policy.

[2] We also note the court of appeals' consideration of the existence and amount of Hudgins' liability coverage in its setoff analysis was error.  *See Green*, 441 S.C. at 168-171, 892 S.E.2d at 526-27.  In joint and several liability situations, a plaintiff may certainly take into account both the existence and amount of liability coverage when deciding from whom to collect and how much.  However, nothing in section 15-38-50, including considerations of equity, allows a court to base a setoff ruling on the existence and amount of liability coverage of a jointly and severally liable defendant.